**UNITED STATES,**

v.

**Douglas T. SPRADLEY, 424–98–4755 Religious Program Specialist Third Class (E–4), U.S. Navy.**

**NMCM 93 00216.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 1 July 1992.

Decided 26 Jan. 1995.

---

**6.** Except as it might bear on evidence of an    unremembered consent.

Maj. HAGEN W. FRANK, USMC, Appellate Defense Counsel.

Maj. S.R. THOMAS, USMCR, Appellate Government Counsel.

LT SCOTT A. BROWNE, JAGC, USNR, Appellate Government Counsel.

LCDR ROSS L. LEUNING, JAGC, USNR, Appellate Government Counsel.

Capt. JOHN F. O'Connor, USMC, Appellate Government Counsel.

Before LARSON, McLAUGHLIN and CLARK, JJ.

LARSON, Chief Judge:

What is the effect of vacating a suspended court-martial sentence that was suspended *after* the accused had been administratively separated from active duty? We hold that the suspended portions of the appellant's sentence were automatically extinguished or remitted by virtue of his earlier separation and concomitant termination of status as a person subject to the Uniform Code of Military Justice [UCMJ]. Therefore, the general court-martial convening authority's act of vacating the suspension was null and void because there was no longer any suspended sentence in existence.

## I.

This strange and improbable issue arises from the following strange and equally improbable set of facts. The appellant was assigned to the Naval Station chapel where he performed duties as the accountant and custodian for the chapel offerings. From 24 November to 22 December 1991, he routinely stole cash from the weekend offerings, and then, using checks donated during the week which he had intentionally not recorded, he substituted those drafts for cash to conceal his thievery. Record at 33–35.

The appellant negotiated a pretrial agreement providing for suspension of all adjudged punishment. The period of suspension was to run for 12 months from the date of trial. However, the agreement further provided that the appellant's failure to make restitution of $1,000 by 15 December 1992 may be a basis for vacating the suspension. Appellate Ex. III; Record at 61.

The appellant was tried on 1 July 1992. Pursuant to his pleas, he was convicted by special court-martial, military judge sitting alone, of larceny of $1,000, property of the U.S. Government, in violation of Article 121, UCMJ, 10 U.S.C. § 921. The military judge sentenced the appellant to confinement for 5 months, forfeiture of $520.00 pay per month for 5 months, reduction to pay grade E–1, and a bad-conduct discharge.

On 28 July 1992, the appellant uttered a personal check as restitution to the Naval Station religious offering fund. His check was dishonored by his bank on 30 July 1992. Staff judge advocate's [SJA] recommendation of 7 Jan 1993. On 3 August 1992, upon his representation to his command that he had made restitution, the appellant was administratively separated from active duty with an honorable discharge and transferred to the Naval Reserve. *Id.*

On 4 August 1992—one day after the appellant's release from active duty—the chapel received notice of dishonor of the appellant's check. On 8 September 1992, pursuant to departmental regulations, the appellant's command requested that the Secretary of the Navy authorize the appellant's recall to active duty for trial by court-martial and to serve any confinement that might be imposed by the court-martial. SJA recommendation, enclosure (1). That request was approved and the appellant was ordered to report to Naval Station, Pearl Harbor on 12 April 1993.

Meanwhile, the convening authority took his action on the court-martial on 20 January 1993. He approved the sentence as adjudged, but pursuant to the terms of the pretrial agreement, he suspended the bad-conduct discharge, forfeitures, and reduction in pay grade.[1]

The appellant failed to report to his duty station on the date ordered but surrendered himself to military authorities on 19 May 1993. Report of Vacation Proceedings, ¶ 5. On 21 May 1993, charges were preferred,

---

1. In apparent reliance on the staff judge advocate's recommendation, the convening authority considered himself bound to honor the pretrial agreement despite the fact that the appellant failed to make restitution by the agreed upon date of 15 December 1992. Furthermore, he apparently concluded that the confinement to 5 months had run because it had not been deferred, and for that reason, he did not suspend that portion of the sentence. These two determinations have not been raised as issues on appeal—no doubt because both of them inured to the appellant's benefit—and, accordingly, we need not pass judgment on them.

alleging violations of Article 83(2), UCMJ (fraudulently procuring his separation by representing falsely that he had made restitution), Article 86, UCMJ (unauthorized absence from 12 April to 19 May 1993), and Article 123a (making the $1,000 check with intent to deceive), UCMJ, 10 U.S.C. §§ 883(2), 886, 923a. The charges were not referred to trial; instead, on 3 June 1993, a vacation proceeding per Rule for Courts–Martial [R.C.M.] 1109(d) was held. Information considered at the proceeding included a recommendation from the appellant's immediate commander that the suspended sentence to forfeitures and reduction be vacated[2] based on the appellant's breach of the pretrial agreement and his unauthorized absence.

On 23 June 1993, the general court-martial convening authority vacated the suspension of all punishment (except confinement), citing the appellant's fraudulent separation as the basis for so doing. Report of Vacation Proceedings, ¶ 19.

II.

On appeal, the appellant initially challenged the legality of the vacation proceeding on the basis that it lacked personal jurisdiction over him because he had not been recalled to active duty for a valid purpose. Article 2(d), UCMJ, 10 U.S.C. § 802(d). We identified what we believe to be a more fundamental issue arising from the facts of this case and directed the parties to submit briefs on that issue, which is set forth as follows:

> DID THE APPELLANT'S SEPARATION FROM ACTIVE DUTY ON 3 AUGUST 1992 RESULT IN AN AUTOMATIC REMISSION OF HIS ADJUDGED SENTENCE? *SEE* R.C.M. 1108(e); *UNITED STATES V. GURGANIOUS,* 36 M.J. 1041 (N.M.C.M.R.1993) AND CITATIONS THEREIN.

We conclude that our resolution of this issue is dispositive and we need not address the assigned issue.

III.

[redacted] The specified issue asks whether the appellant's separation from active duty resulted in a remission of the unexecuted portions of his sentence under R.C.M. 1108(e). Under that rule, an accused's separation that *terminates his status as a person subject to the UCMJ* automatically results in the remission of any suspended sentence. Remission extinguishes the unexecuted portion of the sentence to which it applies. R.C.M. 1108(a). Therefore, the first question we must answer is whether the appellant's separation from active duty on 3 August 1992 terminated his status as a person subject to the UCMJ. Such status is determined principally by reference to Article 2, UCMJ, 10 U.S.C. § 802. Normally, separation from active duty does terminate one's status as a person subject to the UCMJ. *United States ex rel. Toth v. Quarles,* 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955); *United States v. Brown,* 12 C.M.A. 693, 31 C.M.R. 279, 1962 WL 4412 (1962).

Article 2 also sets forth circumstances under which that status may be *restored,* such as an involuntary recall of a reservist to active duty to face trial by court-martial for offenses committed during a prior active duty or inactive duty for training period. Article 2(d); *Murphy v. Garrett,* 29 M.J. 469 (C.M.A.1990). In fact, it is that very provision upon which the appellant's recall was based. Furthermore, it is his reserve affiliation, and his amenability to recall under Article 2(d) because of that affiliation, that give rise to the Government's principal argument that the appellant remained subject to the UCMJ despite his separation from active duty.

We are not persuaded by this argument. As the appellate defense counsel notes (at page 5) in his brief, "subject to recall" is not the same as "subject to the Code." Furthermore, Article 2(a)(3) answers the Government's argument directly. It states that members of a reserve component are subject to the UCMJ *when* they are on "inactive-duty training." Clearly, this jurisdictional

2. He did not recommend vacating the suspension of the bad-conduct discharge. Report of Vacation Proceedings, ¶ 16.

qualification limits UCMJ jurisdiction over a reservist to those times when he or she is actually serving on inactive duty training.[3] Furthermore, if the appellant were subject to the UCMJ at all times as a reservist not on active duty, then he would also be subject to court-martial jurisdiction, *see* R.C.M. 202(c)(1) discussion, and there would be no need to recall him to active duty in order to try him by court-martial. That such a recall requirement exists is not in serious dispute. *Duncan v. Usher,* 23 M.J. 29 (C.M.A.1986). Similarly, under Article 3(d), UCMJ, 10 U.S.C. § 803(d), a reservist may be tried by court-martial for offenses committed during a prior active duty period, but *only during a period when he once again becomes subject to the UCMJ.*[4] In summary, it is clear that, at the moment the appellant's separation from active duty became effective, his status as a "person subject to the UCMJ" terminated, subject only to a subsequent restoration of that status under applicable provisions.

## IV.

Alternatively, the Government argues that we should find that the appellant's separation from active duty was fraudulently obtained—and therefore null and void—because he falsely claimed he had made restitution, which was apparently a condition precedent to his command's agreement to discharge him early. Separation from military service procured by fraudulent means is not a valid separation. *Wickham v. Hall,* 12 M.J. 145 (C.M.A.1981). Furthermore, a separation obtained through fraud would not terminate court-martial jurisdiction over the accused. *United States v. Cole,* 24 M.J. 18 (C.M.A.), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). However, we decline to follow the Government down this path because we do not accept the premise of the argument, i.e., that the appellant's separation was fraudulent.

The statutory scheme that permits the court-martial of a fraudulently separated servicemember for UCMJ violations committed before the separation establishes the requirement that the member first be charged and convicted of that very crime, i.e., fraudulent discharge under Article 83(2), UCMJ, 10 U.S.C. § 883(2), before he may be tried for other prior offenses. Article 3(b), 10 U.S.C. § 803(b); *Cole,* 24 M.J. at 21. In other words, Congress requires a formal *adjudication* of fraudulent separation through trial by court-martial *before* court-martial jurisdiction attaches for other offenses committed prior to the separation.

Furthermore, in terms of the issue before the court, we see no practical distinction between (1) status as a person subject to court-martial jurisdiction under *Wickham* and Article 3(b), UCMJ and (2) status as a "person subject to the UCMJ," as that term is used in R.C.M. 1108(e). Accordingly, absent a judicial determination that the appellant's separation was fraudulent, we may not find that he remained "subject to the UCMJ" after his separation from active duty on 3 August 1992. As noted, there was no such judicial determination in this case. The appellant was charged with a violation of Article 83(2), UCMJ, but he was never tried.[5] In summary, we find that there is no basis upon which to find the appellant's administrative separation invalid.

## V.

Now that we have determined that the appellant's status as a person subject to the UCMJ was terminated upon his separation from active duty, we turn to the effect of that termination of status on his sentence. We can approach that effect in either of two ways and obtain the same result.

First, as noted above, under R.C.M. 1108(e), the appellant's valid separation auto-

---

3. A reservist serving *active* duty training would be subject to the UCMJ under the last clause of Article 2(a)(1).

4. This would occur through the involuntary recall procedures in Article 2(d) or, possibly, through a voluntary return to active duty.

5. Moreover, he was not even convicted of what was alleged to have been the underlying basis of his fraudulent separation: making a worthless check with intent to deceive. Even if we had the authority under Article 3, UCMJ, to determine whether the appellant's separation was fraudulent without a trial by courtmartial, we could not do so on the basis of this record.

matically resulted in the remission of his suspended sentence. *United States v. Gurganious*, 36 M.J. 1041 (N.M.C.M.R.1993); *United States v. Thomas*, 45 C.M.R. 908, 910, 1972 WL 14317 (N.C.M.R.1972). Although in this case, the unexecuted portions of the appellant's sentence were suspended *after* rather than *before* he was separated, this "cart before the horse" situation need not throw us for a loop. Surely, the remitting effect of his separation should be the same regardless of what order the events occurred. We conclude, therefore, that the appellant's separation from active duty and concomitant change in status operated to cause his suspended sentence to be remitted, *nunc pro tunc*, effective at the time it was suspended.

The second approach is based on practicality. It derives from the body of case law that holds that an accused's administrative separation from active duty after court-martial conviction and sentence does not deprive reviewing authorities of jurisdiction to review the case. *United States v. Woods*, 26 M.J. 372 (C.M.A.1988); *United States v. Entner*, 15 C.M.A. 564, 36 C.M.R. 62, 1965 WL 4785 (1965); *United States v. Speller*, 8 C.M.A. 363, 24 C.M.R. 173, 1957 WL 4734 (1957). Those cases have recognized as well that, as a practical matter, a valid administrative separation extinguishes all unexecuted portions of the sentence so that a convening authority's subsequent action purporting to execute, suspend, or vacate the suspension of the remaining portions of the sentence has no legal efficacy. *See also United States v. Woods*, 21 M.J. 856 (A.C.M.R.1986) (historical review of effect of administrative separation on court-martial conviction and sentence), *aff'd*, 26 M.J. 372 (C.M.A.1988).

The applicability of the above to the unexecuted sentence in the appellant's case is clear. Once he was separated, he was receiving no pay subject to forfeiture and he was no longer serving in a pay grade subject to reduction. Likewise, once he received a discharge characterizing his service as "honorable," it would have been futile to send him another characterizing the same period as punitive. Consequently, although the convening authority had the power and the discretion to *approve* the appellant's sentence, his act of suspending the execution of it and the general court-martial convening authority's act of vacating that suspension had no legal efficacy.[6]

■ Having concluded that the unexecuted portions of the sentence have been extinguished or remitted and that the general court-martial convening authority's order of 23 June 1993 vacating the suspension is null and void, we must now determine appropriate remedial action. Like our Army brethren in *Woods*, 21 M.J. at 878, we believe that it makes no sense to approve a sentence that cannot be meaningfully enforced. *Sententia non debet esse illusorium suum effectum habere debet.*[7]

Therefore, we shall approve only that portion of the sentence that was not suspended by the convening authority. The findings of guilty and only so much of the sentence as provides for confinement for 5 months are affirmed.

Judge McLAUGHLIN and Judge CLARK concur.

---

6. We do not fault the convening authority for suspending the remaining portions of the sentence. At the time, he was reasonably under the impression that the pretrial agreement bound him to do so. Also, he believed that the appellant had procured his discharge fraudulently, and he took the correct administrative steps to restore the appellant to duty to answer that charge. Had the appellant been convicted of the charge of fraudulent discharge, his separation would have been rendered invalid and the nulli-fying effect of that separation on the unexecuted sentence would have been set aside by operation of law. *Wickham*, 12 M.J. at 150. Then, the convening authority would have been free to pursue his objective of vacating the suspension on the ground that the appellant failed to make restitution.

7. A sentence ought not to be illusory; it ought to have its proper effect.