CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, HERRING, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellant**
**v.**
**Sergeant STEVEN E. WOLPERT**
**United States Army, Appellee**

ARMY MISC 20160437

Headquarters, 10th Mountain Division
S. Charles Neill,[1] Military Judge
Lieutenant Colonel John J. Merriam, Staff Judge Advocate

For Appellee:  Colonel Mary J. Bradley, JA; Lieutenant Colonel Melissa R. Covolesky, JA; Captain Ryan T. Yoder, JA (on brief).

For Appellant:  Colonel Mark H. Sydenham, JA; Major Jihan Walker, JA; Captain Carling M. Dunham, JA (on brief).

22 September 2016

-----------------------------------------------------------
OPINION OF THE COURT AND ACTION ON APPEAL
BY THE UNITED STATES FILED PURSUANT TO
ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE
-----------------------------------------------------------

CAMPANELLA, Senior Judge:

In this case, we analyze personal jurisdiction over appellee, a member of the reserve component, who allegedly committed criminal acts between periods of inactive-duty training (IDT).  We conclude jurisdiction under Articles 2(a)(3) and 2(c), Uniform Code of Military Justice [hereinafter UCMJ] does not exist.

Appellee was charged with one specification of maltreatment, three specifications of sexual assault, one specification of abusive sexual contact, and one

---

[1] Corrected

specification of fraternization in violation of Articles 93, 120, and 134 UCMJ, 10 U.S.C. §§ 893, 920, 934 (2012).

On 16 June 2016, the military judge dismissed all charges and specifications for lack of personal jurisdiction. The government filed a motion for reconsideration on 19 June 2016, which the military judge denied on 20 June 2016.

This case is before this court pursuant to a government appeal of the military judge's ruling in accordance with Article 62, UCMJ, and Rule for Courts-Martial [hereinafter R.C.M.] 908(a).

## BACKGROUND

Appellee is a member of the reserve component assigned to a unit in Brockton, Massachusetts. His unit conducted IDT on 17-19 October 2014 at Fort Devens, Massachusetts. The unit scheduled five "unit training assembly" (UTA) periods for that weekend. A three-and-a-half-hour UTA (1800-2130) was conducted Friday; two four-hour UTAs (0800-1200, 1300-1700) were conducted Saturday; and two four-hour UTAs (0800-1200, 1300-1700) were conducted Sunday.

According to the government's key witness on this interlocutory question, reserve personnel receive one day of pay and one retirement point for each UTA period attended. A sign-in and sign-out roster was used at the beginning and end of each day for accountability and pay purposes. Appellee attended all five UTAs and signed in and out at the beginning and end of each day.

Because the unit was training away from its home station, the unit paid for lodging, with unit funds, for those whose home of record was more than fifty miles away from the UTA location. As a result, appellee's unit provided lodging-in-kind at a motel in Leominster, Massachusetts, which appellee used. Appellee's unit provided motel rooms because the Fort Devens barracks were full.

The unit also made breakfast, lunch, and dinner available for members on Saturday, 18 October 2014. It is unclear from the record whether appellee received transportation compensation or whether his unit provided transportation, or neither.

On 18 October 2014, after the afternoon UTA period had ended and appellee had signed out on the unit accountability roster, appellee allegedly sexually assaulted an enlisted soldier in his unit at the motel where unit members were being housed by their reserve unit. At the time of the alleged offenses, appellee was the acting first sergeant of the unit.

The Army asserted jurisdiction over appellee and initiated court-martial proceedings. At appellee's court-martial, defense counsel challenged the Army's

personal jurisdiction over appellee.  The military judge dismissed all charges and specifications against appellee for lack of jurisdiction.

## STANDARD OF REVIEW

Jurisdiction is a legal question we review de novo.  *United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006).  When reviewing matters under Article 62(b), UCMJ, we "will take action only with respect to matters of law," and we are "bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous."  R.C.M. 908(c)(2); *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004).  The burden is on the government to prove jurisdiction by a preponderance of the evidence.  *United States v. Oliver*, 57 M.J. 170, 172 (C.A.A.F. 2002); *see also* R.C.M. 905(c)(2)(B).

## MILITARY JUDGE'S FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

After a hearing on this topic, the military judge issued written findings of fact and conclusions of law.  The military judge found that on 17-19 October 2014, the accused's unit conducted scheduled weekend IDT, and the training was comprised of five separate and discrete UTAs.  He also found the appellee was not on orders during this period and that appellee signed out before he allegedly committed the crimes of which he is accused.  The military judge further found that after the conclusion of UTA on Saturday at 1700, 18 October 2014, the IDT period ended until the next morning when appellee signed back in.  Lastly, the military judge found no unit policy purporting to confer jurisdiction over a soldier using lodging-in-kind.  We find the military judge's factual determinations are supported by the record before us and are not clearly erroneous.

In his conclusions of law, the military judge held that appellee signed out at 1700 on 18 October 2014, and was no longer on IDT when he allegedly committed the charged offenses.  He also held that appellee was not ordered into active duty status for any period during the 17-19 October 2014 drill weekend.  Based on these findings, he concluded appellee was not subject to military jurisdiction.

## ANALYSIS

### *Personal Jurisdiction*

"Since 1987 it has been clear that an inquiry into court-martial jurisdiction focuses on the person's status, i.e., whether the person is subject to the UCMJ at the time of the offense."  *United States v. Ali*, 71 M.J. 256, 261 (C.A.A.F. 2012) (citing *Solorio v. United States*, 483 U.S. 435 (1987)); *see also United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006) ("military jurisdiction over the person continues as

long as military status exists."). "Both the Supreme Court of the United States and [the Court of Appeals for the Armed Forces] have insisted that courts-martial not exercise jurisdiction beyond that granted by the applicable statutes." *Willenbring v. Neurauter*, 48 M.J. 152, 157 (C.A.A.F. 1998). That the statutory grants of personal jurisdiction are limited and specific is consistent with the principle that we are a system of limited jurisdiction. The applicable statute, 10 U.S.C. § 802, lists "persons subject" to the UCMJ; it includes:

> (a)(1) Members of a regular component of the armed forces, including . . . other persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it;
>
> [ . . . ]
>
> (a)(3) Members of a reserve component while on inactive-duty training; and
>
> [ . . . ]
>
> (c) a person serving with an armed force (who submitted voluntarily to military authority; met mental competency and minimum age at the time of voluntary submission to military authority; received military pay or allowances; and performed military duties).

### 1. Article 2(a)(1)—On Orders

Pursuant to Article 2(a)(1), UCMJ, persons under a call or order for duty or training are subject to the UCMJ from the dates when they are required by the terms of the order to obey it. This means that reserve component soldiers ordered to annual training (AT), active duty for training (ADT), or other forms of active duty are subject to the UCMJ. *Id. See also* R.C.M. 202 discussion (2)(A)(i) (2012); *Duncan v. Usher*, 23 M.J. 29, 34 (C.M.A. 1986)("under Article 2(a)(1), Congress granted jurisdiction over Reserves who are on active duty.").[2]

---

[2] 10 U.S.C. § 101(d)(1) defines "active duty" as "full-time duty in the active military service of the United States" that "includes full-time training duty, annual training duty . . . ."

Here the government produced the appellee's unit training calendar indicating scheduled training dates throughout the year. The government also produced evidence that appellee had a contractual obligation to attend a certain amount of training each year. The government did not, however, produce evidence that appellee was ordered or obligated to attend the 17-19 October UTAs.

Mr. Bouchard, a staff operations training specialist in his civilian capacity and the deputy battalion commander of appellee's reserve unit, testified that appellee was not "under a call or order for duty or training." He explained that with a supervisor's approval, a member of the unit could miss some of the UTAs as long as he or she still fulfilled the forty-eight UTA per year obligation. Based on the record before us and the fact that Article 2(a)(3) specifically covers periods of IDT, we agree with the military judge's conclusion that no jurisdiction exists under Article 2(a)(1), UCMJ.

### 2. *Article 2(a)(3)—On Inactive-Duty Training*

Article 2(a)(3), UCMJ, covers "[m]embers of a reserve component while on inactive-duty training." The question before this court is whether IDT includes periods before signing in and after signing out of an IDT drill period, while away from home station and not on orders, and while receiving in-kind lodging and provided meals. The Court of Appeals for the Armed Forces (CAAF) recently acknowledged Article 2(a)(3), UCMJ, has not been the subject of much analysis but "little analysis is required to conclude that the operative statutory language refers to, and thus is limited to, a 'member[] of a reserve component' 'while on inactive-duty training.'" *United States v. Morita*, 74 M.J. 116, 120 (C.A.A.F. 2015). *See* 10 U.S.C. § 101(d)(7).[3]

---

[3] The Air Force Court of Criminal Appeals (Air Force Court) has decided two cases concerning IDT. In 1992, a reservist challenged Article 2(a)(3) jurisdiction over his mid-afternoon larceny for three reasons: 1) he only signed into the morning session but did not sign out of the afternoon session due to his apprehension; 2) he was not present during the afternoon session; and 3) he was not paid for the afternoon session. *United States v. Wall*, ACM 29002, 1992 CMR LEXIS 642 (A.F.C.M.R. 1992). The court found jurisdiction because the reservist, who was still in uniform, had not departed from IDT at noon during any prior drill weekend and did not request permission to do so on the date of his offenses. Additionally, it was his apprehension that prevented him from signing the afternoon sheet.

More recently, the same court found a reservist "was in military status and thus subject to military jurisdiction" pursuant to Article 2(a) for the entire IDT weekend, not just during each of the "four-hour blocks[s] of training, duty or instruction."

(continued . . .)

Here, the government attempted to prove jurisdiction through Mr. Bouchard's testimony. Mr. Bouchard agreed with the military judge's reading of Army Reg. 140-1, Army Reserves Mission Organization and Training [hereinafter AR 140-1], para. 3-4 (20 Jan. 2004), in that a reservist who shows up to a four hour UTA gets one day's pay or one retirement point or both. Mr. Bouchard also agreed that on 18 October 2014, the period from first formation at 0800 until a break at 1200 would constitute a completed UTA period. Similarly, from 1300 until 1700 constituted the second UTA. The purpose of signing out at the end of the UTA was to certify the soldier's presence for the full day for pay purposes. Mr. Bouchard also indicated a reservist would have no additional duties the rest of the duty day after signing out.[4]

The military judge's finding that the IDT period ended when appellee signed out of the second UTA on Saturday at 1700, 18 October 2014, is not clearly

---

(. . . continued)

*United States v. Morita*, 73 M.J. 548, 552 n. 3, 558-59 (A.F. Ct. Crim. App. 2014). The CAAF disagreed with the Air Force Court's finding of jurisdiction because the documents introduced by the government that showed the dates of the IDT time frames were possibly forged and therefore could not place a reservist in a military status that would confer UCMJ jurisdiction. *Morita*, 74 M.J. at 121-22.

The Navy-Marine Corps Court of Criminal Appeals has also addressed Article 2(a)(3): "Clearly, this jurisdictional qualification limits UCMJ jurisdiction over a reservist to those times when he or she is *actually serving on inactive duty training*." *United States v. Spradley*, 41 M.J. 827 (N.M. Ct. Crim. App. 1995). *Spradley*, however, was limited to determining that the appellee's separation from active duty terminated UCMJ jurisdiction over crimes he committed while on active duty.

[4] While it is unclear how reservists are provided meals and lodging when they have no military status during periods outside the UTA, the government provides no evidence to support a different conclusion. Authority also exists to find a service member in the line of duty due to an injury, illness, or disease incurred or aggravated while remaining overnight immediately before the commencement of inactive-duty training, or while remaining overnight, between successive periods of inactive-duty training, at or in the vicinity of the site of the inactive-duty training. 37 U.S.C. § 206. Likewise, a reservist is eligible for death gratuity payments if he or she: 1) dies while on IDT; 2) assumed an obligation to perform IDT and dies while traveling directly to or from that IDT; or 3) dies while staying at his or her residence during the period of such IDT or between successive days of IDT. 10 U.S.C. § 1475. These statutes, however, do not confer jurisdiction.

erroneous nor unsupported by the record. Based on the evidence before us, we conclude there was not jurisdiction under Article 2(a)(3).[5]

### 3. Article 2(c)—Serving with an Armed Force

Reserve component servicemembers are only explicitly subject to UCMJ jurisdiction when performing active duty or IDT under Article 2(a)(3), UCMJ. Appellee argues that the application of Article 2(c) under these circumstances would render Article 2(a)(3) superfluous. In *United States v. Phillips*, however, the CAAF held UCMJ jurisdiction could attach to reserve servicemembers by applying Article 2(c), UCMJ. 58 M.J. 217 (C.A.A.F. 2003).

In applying Article 2(c), UCMJ to this case, appellee does not meet the *Phillips* factor we find most important–specifically, he was not ordered to active duty or on orders of any kind. In interpreting statutes, where one reading would cause a redundancy and another would avoid it, we will not adopt the reading that causes a redundancy. *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307-08 (1961). If a member of the reserve component is subject to UCMJ jurisdiction under Article 2(c) for the entire IDT weekend, there would be no need for Article 2(a)(3). We, therefore, conclude he was not serving with the armed forces for purposes of personal jurisdiction. We find the government did not prove the court-martial had Article 2(c) jurisdiction over appellee.

## CONCLUSION

Based upon our review of the record, the appeal of the United States is DENIED.

---

[5] At the Secretary of Defense's direction, the General Counsel of the Department of Defense established the Military Justice Review Group (MJRG) to conduct a comprehensive review of the military justice system. Recently, the MJRG recommended amendments to Article 2(3)(a), UCMJ, to provide a basis for personal jurisdiction over reservists performing inactive-duty training (IDT) in certain circumstances. Specifically, the MJRG was concerned about jurisdictional gaps when misconduct by a reserve component member is carried out: 1) while en route from their home to their IDT drill site, 2) while berthed in military housing or contract commercial berthing, 3) during periods between successive IDTs (i.e. meal breaks and Saturday evenings), or 4) while en route from the IDT site to their home. Military Justice Review Group, Dep't of Defense, Report of the Military Justice Review Group Part I: UCMJ Recommendations 154 (2015). However, while amendments to Article 2, UCMJ, are currently pending before Congress, they are not law and have no effect on this case.

Judge HERRING and Judge PENLAND concur.

FOR THE COURT:

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court