Cite as 2020 Ark. 241

# SUPREME COURT OF ARKANSAS

**Docket No.:** CR–19–52

| | |
|---|---|
| | **Opinion Delivered:** June 11, 2020 |
| ADAM S. CHILDERS<br>APPELLANT | APPEAL FROM A GENERAL COURT-MARTIAL OF THE ARKANSAS ARMY NATIONAL GUARD |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | [NO. GCMCO 2018-01-JFHQ]<br><br>COLONEL STEVEN ZEGA, MILITARY JUDGE<br><br>REVERSED AND DISMISSED, |

**JOSEPHINE LINKER HART, Associate Justice**

A court-martial convened by the Arkansas Army National Guard (hereafter, the "Arkansas Guard") convicted Chief Warrant Officer 4 Adam S. Childers (Childers), a member of the Arkansas Guard, of various charges and specifications. Childers, who is also employed as a federal technician at the Arkansas Aviation Facility, appeals from a finding of guilty of two specifications of cruelty and maltreatment and two specifications of failure to obey an order or regulation.

At the court-martial proceedings, Childers entered a negotiated plea of guilty to these charges, but specifically reserved his right to appeal. On appeal to this court, Childers argues that because he was not in a "duty status" at the time of the incident that led to his court-martial, the court-martial lacked jurisdiction over him. We agree. As to the charges and specifications Childers is appealing, we reverse the lower tribunal's determination on jurisdiction and dismiss.

I.       *Factual and Procedural History*

Childers' alleged offenses occurred on December 12, 2016, between 6:00 p.m. and midnight in Norman, Oklahoma.  On the morning of December 12, Childers, together with other co-employees of the Arkansas Aviation Facility who were also members of the Arkansas Guard, gathered at Camp Robinson at 7:00 a.m.  This was the standard time and place for weekend inactive-duty training ("IDT") for Arkansas Guardsmen. The small group that gathered on December 12 did so in anticipation of traveling as a group to a National Guard Bureau Aviation Safety and Standardization conference in Norman, Oklahoma. Childers attended this conference under the Additional Flight Training Period Program ("AFTPP").  Pay and allowances for AFTPPs are authorized as IDT for purposes of U.S.C. Title 32.

Childers and the others who traveled with him rode to the conference in an SUV owned by the Arkansas Guard.  This group was traveling to the conference under AFTPP/IDT status.  Their AFTPP/IDT status did not change when they loaded into the SUV and left the Camp Robinson premises.  Neither did their pay status.  Both their duty status and pay status remained the same from their 7:00 a.m. gathering time until they arrived at the conference at 6:00 p.m.  Likewise, payment for meals and lodging during the performance of AFTPP/IDT does not alter a member of the Arkansas Guard's status. Instead, that reimbursement for cost expended by a member of the Arkansas Guard is provided based on where the mission for the training period is located in relation to the home-duty station—in this instance the distance between Norman, Oklahoma, and Camp Robinson.  Childers' AFTPP/IDT records reflect that on December 12, 2016, he was paid

2

for participation in the program from 7:00 a.m. to 11:00 a.m. and then again from 11:01 a.m. to 6:00 p.m. Childers was subject to no other military orders on December 12.

The principal allegation against Childers is that sometime between 6:00 p.m. and midnight on December 12, he sexually assaulted another member of his unit who was also attending the conference. The charge sheet from Childers' court-martial proceedings reflects that he was initially charged with four specifications of "Sexual Misconduct" under Ark. Code Ann. § 12-64-845, two specifications of "Cruelty and Maltreatment" under Ark. Code Ann. § 12-64-818, and two specifications of "Failure to Obey Order or Regulation" under Ark. Code Ann. § 12-64-817.

Childers filed a motion to dismiss arguing that he was not on active duty or Title 32 status at the time the alleged charges would have occurred. The military judge denied Childers' motion to dismiss. After this denial, Childers entered a negotiated guilty plea, with various terms. Childers pleaded guilty to the charges and specifications for Cruelty and Maltreatment and Failure to Obey Order or Regulation. The charges and specifications for Sexual Misconduct were dismissed. Finally, Childers specifically reserved the right to appeal the military judge's decision on jurisdiction.[1] The military judge accepted Childers' plea[2], and Childers exercised his negotiated right to appeal.

---

[1] Childers does not appeal the military judge's determination of guilt as to Specification II of Charge III for Failure to Obey Order or Regulation. This opinion has no application to that specific determination of guilt.

[2] The military judge sentenced Childers to dismissal from the Arkansas Guard, confinement for a period of 180 days, a fine of 100 percent of all base pay and allowances for 180 days, and a punitive reprimand.

3

## II.    *Appellate Jurisdiction*

At the time of the alleged offenses, Ark. Code Ann. § 12-64-402 (Repl. 2015) provided:

> (a) Each force of the organized militia has court-martial jurisdiction and powers over all persons subject to this code and shall follow the forms and procedures provided for similar courts of the United States Army and United States Air Force.

Turning to the forms and procedures for tribunals of the United States Military, Rule 910(a)(2) from the United States Manual for Courts-Martial governs conditional pleas. It states,

> (2) Conditional pleas. With the approval of the military judge and the consent of the Government, an accused may enter a conditional plea of guilty, reserving the right, on further review or appeal, to review of the adverse determination of any specified pretrial motion.

These provisions provide for an appeal from a negotiated guilty plea that reserves the right to appeal an adverse determination of any specified pretrial motion.  However, this appears to conflict with other provisions incorporated through Ark. Code Ann. § 12-64-714(a)(1)(B).  Arkansas Code Annotated § 12-64-714(a)(1)(B) provides that the Arkansas Rules of Appellate Procedure–Criminal shall apply to all appeals to the supreme court and court of appeals.  Arkansas Rule of Appellate Procedure–Criminal 1 then provides that there shall be no appeal from a guilty plea except as provided in Arkansas Rule of Criminal Procedure 24.3(b).  None of the exceptions contemplated by Rule 24.3(b) would apply in this instance.

In other words, Ark. Code Ann. § 12-64-402 and Rule 910(a)(2) from the United States Manual for Courts-Martial contemplate that Childers could enter a negotiated guilty

4

plea and still appeal the court-martial's denial of his motion to dismiss for lack of jurisdiction. On the other hand, Ark. Code Ann. § 12-64-714(a)(1)(B) and our rules of criminal procedure for appellate and trial courts do not contemplate the availability of an appeal in this situation. Considering the explicit availability of this procedure in United States court-martial proceedings and Ark. Code Ann. § 12-64-402's endorsement thereof, we resolve this conflict in favor of Childers. While our rules of criminal procedure for trial courts may not have contemplated their application to court-martial proceedings,[3] Childers nonetheless has an independent statutory right to the procedure of a negotiated guilty plea reserving the right to appeal in a court-martial proceeding. Ark. Code Ann. § 12-64-402 (Repl. 2015); Rule 910(a)(2)—United States Manual for Courts-Martial. We now address the merits of Childers' appeal.

III.    *Court-Martial Jurisdiction*

The question presented on appeal is whether Childers was subject to the Arkansas Guard's court-martial jurisdiction under the law in effect at the time of the alleged offenses. This court reviews a lower tribunal's determination of jurisdiction de novo on appeal. A court-martial is a tribunal of limited jurisdiction, and the bounds of court-martial jurisdiction are set by the legislature. As to the general court-martial authority for the Arkansas Guard, Ark. Code Ann. § 12-64-801 provides that "[n]o person may be tried or punished for any

---

[3]The dissent suggests that we reject Childers' appeal and refer the conflict to our Committee on Rules of Criminal Procedure for future cases, but this approach would implicate due process concerns with respect to Childers' case. There have been developments in this area of law since the facts of Childers' case transpired, but we do ask that our Committee on Rules of Criminal Procedure address this situation at its first opportunity and clarify any remaining conflicts or ambiguities.

5

offense provided for in this code, unless it was committed while he or she was in a duty status." At the time of the alleged offenses, Ark. Code Ann. § 12-64-402 provided:

> (a) Each force of the organized militia has court-martial jurisdiction and powers over all persons subject to this code and shall follow the forms and procedures provided for similar courts of the United States Army and United States Air Force.
>
> (b) The exercise of jurisdiction by one force over personnel of another force shall be in accordance with regulations prescribed by the Governor.
>
> (c) The jurisdiction of the military courts and boards established by this code shall be presumed and the burden of proof rests on any person seeking to oust those courts or boards of jurisdiction in any action or proceeding.

(Repl. 2015). While Ark. Code Ann. § 12-64-402 provides that court-martial jurisdiction is "presumed" and places the burden of proving otherwise upon the accused, military courts for the United States have held that an accused's military status is a necessary element of the charged offense to be proven beyond a reasonable doubt (*see United States v. McDonagh*, 14 M.J. 415, 422 (C.M.A. 1983)).

Regardless, the facts of this case relevant to the jurisdiction issue are not disputed on appeal. No party argues that Childers was on active duty at the time of the alleged offense. Similarly, no party disputes that Childers was on AFTPP/IDT status between 7:00 a.m. and 11:00 a.m. and again between 11:01 a.m. and 6:00 p.m. And no party disputes that the alleged offense occurred between 6:00 p.m. and midnight. Again, for clarity, pilots who have met proficiency requirements may refer to their IDT periods as AFTP (Additional Flight Training Period). Childers' pay for the period is identical to all AFTPP/IDT pay for all Guard members on the trip. Neither Childers nor any other federal employee and member of the Arkansas Guard accompanying Childers on the trip was placed on active-

6

duty orders. An order placing a Guardsman on active duty is a status-changing event. Once someone is ordered to active duty, that person is no longer an inactive-duty guardsman, but is instead a full-time, twenty-four-hour-a-day seven-day-a-week member of the military, to be awarded pay and allowance exactly as any other solider would be. There was no other order or circumstance in this case that would place Childers in a duty status outside of his AFTPP/IDT. Therefore, this court must answer the legal question of whether court-martial jurisdiction extended to an alleged offense occurring after or between AFTPPs/IDTs when there was no other order or circumstance that would place the accused in a duty status.

This court has not had the occasion to address the Arkansas Guard's court-martial jurisdiction. However, the United States Army Court of Criminal Appeals recently addressed a scenario very similar to the one presented in this case. In *United States v. Wolpert*, 75 M.J. 777 (2016), a U.S. Army reserve member conducted IDT with his unit over a three-day period in Fort Devens, Massachusetts. The unit conducted IDT for one three-and-a-half-hour period on the first day, two four-hour periods on the second day, and two four-hour periods on the third day. The accused was not ordered to active-duty status for any amount of time during the three-day period. On the second day, after completing the two periods of IDT and returning to the motel where unit members were being housed, the accused allegedly sexually assaulted another soldier in his unit. The military judge concluded that while members of a reserve component are subject to the Uniform Code of Military Justice during IDT and therefore subject to court-martial jurisdiction, that jurisdiction did not extend to periods between or after IDT. Accordingly, the accused was

7

not subject to court-martial jurisdiction at the time of the alleged offense. On appeal, the United States Army Court of Criminal Appeals agreed with the military judge:

> The military judge's finding that the IDT period ended when appellee signed out of the second UTA on Saturday at 1700, 18 October 2014, is not clearly erroneous nor unsupported by the record. Based on the evidence before us, we conclude there was not jurisdiction under Article 2(a)(3).

*Id.* at 781.

Turning to the present case, we see no reason to treat this scenario differently from how the United States Army Court of Appeals did in *Wolpert*. Whether or not a servicemember is in a duty status is a line that should not be blurred. The requirement "[t]hat only reservists who meet the statutory requirements are subject to the UCMJ reflects Congress's determination that for other misconduct they are subject to the jurisdiction of the civilian courts." *United States v. Morita*, 74 M.J. 116, 132 (C.A.A.F. 2015); *see also Duncan v. Usher*, 23 M.J. 29, 34 (C.M.A. 1986) ("[T]he [UCMJ] makes no provision for jurisdiction over someone who is 'essentially' on active duty. . . . [A]ctive duty is an all-or nothing condition: [a reservist] either is on active duty or he is not!"). The rationale of declining to extend court-martial jurisdiction beyond that statutorily authorized by Congress is no less applicable to Acts of the Arkansas General Assembly. The fact alone that one would be entitled to reimbursement funds paid out of Title 32 is not a status-changing event. Based on the record before us and pursuant to the law in effect at the time, Childers' duty status on December 12, 2016, ended after completing his IDTs for the day—6:00 p.m. The alleged offenses would have occurred later that evening while Childers was not in a duty status. The lack of a duty status means there was no court-martial jurisdiction for those offenses under Ark. Code Ann. § 12-64-801.

8

Reversed and dismissed.

WOMACK, J., concurs.

KEMP, C.J., dissents.

**SHAWN A. WOMACK, Justice, concurring.** For the reasons set forth in the dissenting opinion, I respectfully disagree with the majority's analysis regarding our appellate jurisdiction to hear this case. Nevertheless, I believe we have appellate jurisdiction because the sole issue on appeal is the court-martial's subject matter jurisdiction. I accordingly concur with the majority's decision to take up this case and join its analysis on the merits.

A guilty plea waives nonjurisdictional defects and errors. *See Garrett v. State*, 296 Ark. 550, 551, 759 S.W.2d 23, 24 (1988). Indeed, we have previously held that "a plea of guilty was in itself a conviction and an admission of all elements of the charges and constituted a waiver of any defense, other than jurisdiction, which might have been raised at trial." *Scalco v. City of Russellville*, 318 Ark. 65, 68, 883 S.W.2d 813, 814 (1994). That said, we have declined to consider certain "jurisdictional" issues—namely, speedy trial and statute of limitations—following a guilty plea. *See Eckl v. State*, 312 Ark. 544, 546–47, 851 S.W.2d 428, 429–30 (1993).[4] But the jurisdictional issues in *Eckl* are far different than the fundamental question of subject matter jurisdiction present in this case.

Subject matter jurisdiction "is the power of the court to hear and determine a cause, including the power to enforce its judgment; it is the power to hear and determine the

---

[4]*Eckl* preceded an amendment to Arkansas Rule of Criminal Procedure 24.3, which now allows for a conditional guilty plea reserving the right to challenge speedy trial issues. *See* Ark. R. Crim. P. 24.3(b)(ii) (2009).

subject matter in controversy between the parties." *Standridge v. State*, 2014 Ark. 515, at 10, 452 S.W.3d 103, 110. Because jurisdiction is the authority of a court to hear a case on its merits, lack of subject matter jurisdiction "is always open, cannot be waived, can be questioned for the first time on appeal, and can even be raised by this court." *State v. Boyette*, 362 Ark. 27, 31, 207 S.W.3d 488, 491–92 (2005) (internal quotation omitted). Further, subject matter jurisdiction cannot be conferred by consent of the parties. *See Beulah v. State*, 352 Ark. 472, 474, 101 S.W.3d 802, 804 (2003). "[W]hen a court lacks jurisdiction over a defendant, any judgment rendered thereafter is void *ab initio.*" *Davis v. Kelley*, 2019 Ark. 64, at 5, 568 S.W.3d 268, 271.

It follows that a guilty plea cannot waive questions of subject matter jurisdiction. Indeed, many other jurisdictions have made clear that a defendant may file a direct appeal following a plea of guilt to challenge the lower court's subject matter jurisdiction. *See, e.g.*, *United States v. Brice*, 373 Fed. App'x 561, 562 (6th Cir. 2010); *United States v. Miranda*, 780 F.3d 1185, 1188–89 (D.C. Cir. 2015); *Leonard v. Florida*, 760 So.2d 114, 117 (Fla. 2000); *Windsor v. Kentucky*, 250 S.W.3d 306, 307 (Ky. 2008); *Smith v. Delaware*, 841 A.2d 308 (Del. 2004); *Mack v. Wisconsin*, 286 N.W.2d 563, 566 (Wis. 1980). This allowance by other courts is premised on the same principles embraced by our caselaw. That is, the fundamental nature of subject matter jurisdiction, that it can never be waived, and can be raised at any time. Following these principles, I believe we have appellate jurisdiction to consider Childers' sole issue on appeal challenging the court-martial's subject matter jurisdiction. Accordingly, I concur in the majority's decision today.

**JOHN DAN KEMP, Chief Justice, dissenting.** Under our current court rules, this court lacks jurisdiction to consider Adam Childers's appeal from his negotiated guilty plea in a court-martial proceeding. For this reason, I respectfully dissent.

It is fundamental that a general statute must yield to a specific statute involving a particular subject matter. *See City of Rockport v. City of Malvern*, 2012 Ark. 445, at 4, 424 S.W.3d 870, 874; *L.H. v. State*, 333 Ark. 613, 617, 973 S.W.2d 477, 479 (1998). The majority acknowledges that an apparent conflict exists between Arkansas Code Annotated section 12-64-402 (Repl. 2015) and section 12-64-714(a)(1)(B) (Repl. 2015). Although section 12-64-402 addresses court-martial jurisdiction generally and provides that the forms and procedures for tribunals of the United States Military shall be used in such proceedings, section 12-64-714(a)(1)(B) specifically addresses appeals in Arkansas courts from court-martial proceedings and states that those appeals are governed by our court rules. In my opinion, the latter statute is more specific than the former to this court-martial appeal and therefore applies in the instant case.

Pursuant to our court rules, there shall be no appeal from a guilty plea except under the circumstances provided by Arkansas Rule of Criminal Procedure 24.3(b). Ark. R. App. P.–Crim. 1. As the majority recognizes, "[n]one of the exceptions contemplated by Rule 24.3(b) would apply in this instance." Thus, by allowing this appeal to proceed, the majority's holding has the effect of creating a new exception to Rule 24.3(b). In my view, we should not hastily carve out another Rule 24.3(b) exception for application to a pending appeal. Rather, we should refer the matter to the Committee on Criminal Practice for proper consideration and comment with a recommendation returned to this court in due

course. *E.g.*, *Clark v. State*, 374 Ark. 292, 304, 287 S.W.3d 567, 576 (2008); *McNabb v. State*, 367 Ark. 93, 101, 238 S.W.3d 119, 125 (2006).

Because we lack jurisdiction under the current version of Rule 24.3(b), the appeal should be dismissed.

I respectfully dissent.

*Gapasin, Capovilla & Williams*, by: *Nathan Freeburg*, *pro hac vice*; and *The Asa Hutchinson Law Group, PLC*, by: *W. Asa Hutchinson III*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.