UNITED STATES, Appellant/Cross-Appellee

v.

Steven S. MORITA, Lieutenant Colonel
U.S. Air Force, Appellee/Cross-Appellant

No. 14-5007

Crim. App. No. ACM 37838

United States Court of Appeals for the Armed Forces

Argued October 20, 2014

Decided March 16, 2015

RYAN, J., delivered the opinion of the Court, in which BAKER,
C.J., ERDMANN, STUCKY, and OHLSON, JJ., joined.


Counsel


For Appellant/Cross-Appellee:  Major Rhea A. Lagano (argued);
Lieutenant Colonel Katherine E. Oler and Gerald R. Bruce, Esq.
(on brief); Lieutenant Colonel C. Taylor Smith.

For Appellee/Cross-Appellant:  Matthew A. Siroka, Esq. (argued);
Captain Christopher D. James (on brief).


Military Judge:  David Castro


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**.

Judge RYAN delivered the opinion of the Court.

The facts in this case are quite complicated and set forth in detail in United States v. Morita, 73 M.J. 548, 551-53 (A.F. Ct. Crim. App. 2014). However, the relevant facts and related legal questions are relatively straightforward.[1] Appellee/Cross-Appellant (Appellee), a reservist, used his knowledge of the military travel reimbursement system, and took advantage of his supervisor's relative lack of knowledge of the system, to file false claims of travel reimbursement totaling over $120,000. Id. at 551-52. To do this, he forged signatures on travel vouchers and reimbursement documents, as well as travel orders, active duty orders, and inactive duty training orders. Id. at 552. The question is during what period or periods of his misconduct was Appellee subject to the Uniform Code of Military Justice (UCMJ), since there is no jurisdiction over a reservist

---

[1] This Court granted review of a certified issue and a granted issue respectively:

    I.    WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED WHEN IT FOUND THE COURT-MARTIAL LACKED SUBJECT MATTER JURISDICTION AND WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ABUSED ITS DISCRETION WHEN IT REFUSED TO GRANT THE GOVERNMENT'S MOTION TO SUBMIT DOCUMENTS.

    II.   WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED BY FINDING THAT A RESERVIST CAN CREATE COURT-MARTIAL JURISDICTION BY FORGING ACTIVE DUTY ORDERS AND/OR INACTIVE DUTY TRAINING ORDERS AND BY FINDING THAT COURT-MARTIAL JURISDICTION EXISTED FOR EACH 120-DAY PERIOD LISTED ON THE THREE APPLICATIONS FOR MPA MAN-DAY TOURS.

who commits an offense when not in a military status -- i.e., on active duty, inactive duty training, or serving with the armed forces. See Article 2(a), (c), UCMJ, 10 U.S.C. § 802(a), (c) (2012); United States v. Phillips, 58 M.J. 217 (C.A.A.F. 2003).

First, we agree with the United States Air Force Court of Criminal Appeals (CCA) that Appellee was subject to court-martial jurisdiction under Article 2(a), UCMJ, for all offenses committed during the periods Appellee was on active duty pursuant to orders that the Government demonstrated were valid by a preponderance of the evidence. Morita, 73 M.J. at 557-59.

Second, we are faced with a question of first impression -- can a reservist place himself under court-martial jurisdiction under Article 2(a), UCMJ, by forging either active duty orders or inactive duty training orders? We answer this question in the negative. Under Article 2(a)(1), UCMJ, the military justice system has subject matter jurisdiction over a reservist when that reservist is lawfully ordered to duty or training in the armed forces. When a reservist forges his orders, he is not "lawfully" ordered to duty or training. Id. Nor, with respect to Article 2(a)(3), UCMJ, is there any evidence that Appellee actually was "on inactive-duty training" pursuant to the forged orders. Article 2(a), UCMJ (emphasis added).

Third, could a reservist nonetheless be amenable to court-martial jurisdiction under Article 2(c), UCMJ, under forged

3

orders or during other periods, based solely on his capacity as a reserve officer, without more? Under Article 2(c), UCMJ, and Phillips we conclude that the answer is no given the facts of this case. Both require that the reservist be, as a threshold matter, "serving with" the armed forces at the time of the misconduct, and meet the other four criteria set forth in the statute. In this case, the CCA found that the Government did not establish either that Appellee was serving with the armed forces during any period not covered by Article 2(a), UCMJ, jurisdiction or that the other statutory criteria were met for Article 2(c), UCMJ, jurisdiction. Morita, 73 M.J at 557-58, 560-61.

## I. FACTS

The below rendition of facts is taken in large part from the CCA's opinion in Morita, 73 M.J. at 551-53. Appellee was a reservist assigned to work at the Health Facilities office in the Western Region (HFO-WR). Id. at 551 (referring to the HFO-WR as the "Health Services Office, Western Region"). As part of his duties, Appellee traveled frequently to various medical units within the Western Region to aid in the planning, design, and development of construction projects for medical facilities. Id. He was very experienced with the duties and operations of the HFO-WR because he had been assigned there as an active duty

officer from 1998 until 2003.  Id.  Notably, he was the only reservist assigned to the unit.  Id.

At the beginning of each fiscal year, Appellee received authorization to work 120 military personnel appropriation (MPA) "man-days" on active duty.  Id. at 552.  Appellee's supervisor during the charged time period testified to requesting these 120 MPA man-day periods of active duty.  Although the MPA man-day tours were approved on the AF Form 49s for a "block" of days, Appellee and his supervisors had an informal agreement that he could perform 120 days of work intermittently and non-consecutively throughout the entire fiscal year, rather than during the block of time specified on the AF Form 49s.

The CCA found that beginning in roughly November 2005 and continuing until October 2008, Appellee took advantage of his supervisor's unfamiliarity with the process of approving reservist travel orders and vouchers.  Id.  Some of his trips during this time period were properly approved.  Appellee filed numerous travel vouchers, however, for expenses he was not entitled to incur while on these approved trips.  Moreover, some of his travel during this time frame was not authorized.  To accomplish this unauthorized travel, Appellee forged his supervisors' signatures on numerous travel orders, travel

vouchers, reimbursement documents, active duty orders, and records of inactive duty training (IDT).[2]

Appellee's false claims for travel reimbursement totaled $124,664.03, and he forged 510 signatures or initials on more than 100 documents.  Id. at 553.

---

[2] Specifically, the CCA found:

A lengthy investigation revealed the appellant forged signatures on the following documents:

— Department of Defense (DD) Form 1351:  Travel voucher used to claim reimbursement for expenses such as lodging, airline tickets, rental cars, mileage, tolls, parking, per diem entitlement, and similar costs.

— DD Form 1610:  Request and authorization for temporary duty travel of Department of Defense personnel.  Used to request, review, approve, and account for official travel.

— Air Force (AF) Form 40A:  Record of individual IDTs.  Used to record a reserve member's IDT periods for payment and/or points for years of service credit, and determine the member's fulfillment of the requirements for retention in the Ready Reserve.

— AF Form 938:  Request and authorization for active duty training/active duty tour.  Used to request and authorize Air Force reservist tours of active duty as well as acting as a temporary duty travel order.

— AF Form 973:  Request and authorization for change of administrative orders.  Used to change orders previously issued.

— Memorandum for Record (MFR):  Various MFRs authorizing exceptions to normal expense limitations, such as exceeding the maximum allowable lodging expense for a given location.

Morita, 73 M.J. at 552-53.

## II. CHARGES AND SENTENCE

Appellee was charged and convicted by a panel of officer members of seven specifications of forgery, one specification of larceny of government money, and one specification of forgery of signatures in connection with claims, in violation of Articles 123, 121, and 132, UCMJ, 10 U.S.C. §§ 923, 921, 932 (2012). Morita, 73 M.J. at 551. The members sentenced Appellee to dismissal, confinement for twelve months, a fine of $75,000, and contingent confinement for an additional twelve months in the event the fine was not paid. The convening authority approved the sentence as adjudged. Id.

## III. CHALLENGE OF JURISDICTION

In his Article 32, UCMJ, 10 U.S.C. § 832 (2012), report, the investigating officer noted that there were unresolved issues related to jurisdiction. At trial, Appellee argued that the Government had not established that he was subject to the UCMJ under Article 2(a), UCMJ, or Article 2(c), UCMJ, during the time the offenses were alleged to have occurred. The Government defended jurisdiction primarily on the grounds that Appellee made the forgeries in his official capacity as a reserve officer. To support jurisdiction, the Government also submitted the three approved applications for 120 MPA man-days for each year in the charged time frame.

7

The military judge denied Appellee's motion to dismiss, relying on Article 2(c), UCMJ, and United States v. Morse, No. ACM 33566, 2000 CCA LEXIS 233, 2000 WL 1663459 (A.F. Ct. Crim. App. Oct. 4, 2000) (unpublished). Tellingly, "[t]he military judge accepted the Government's argument that it was not necessary for the Government to prove [Appellee] committed the charged misconduct while on active duty orders or while performing IDTs." Morita, 73 M.J. at 554. The military judge concluded that "the appellant's actions took place in his capacity as a reserve officer, thereby establishing subject matter jurisdiction based on this fact alone" and "that subject matter jurisdiction was established pursuant to the four-part test in Article 2(c), UCMJ, 10 U.S.C. § 802(c)." Id.

Appellee raised the issue of subject matter jurisdiction again before the CCA, once more arguing that the Government had failed to prove that he was subject to the UCMJ during the charged time frame. In ruling on jurisdiction, the CCA identified three separate statuses that Appellee occupied during the charged time frame: (1) valid active duty status obtained through authorized 120 MPA man-day tours, Morita, 73 M.J. at 558; (2) active duty status or inactive duty status based on documents that contained forgeries, although there was no evidence that Appellee actually reported for duty during the time periods covered by the forgeries, id. at 559; and (3)

8

reserve status, held during the remainder of the charged time frame. Id. at 560. The CCA held that the first two categories conferred subject matter jurisdiction under Article 2(a), UCMJ. Id. at 559. Regarding the third category, the CCA found that the record did not show enough facts to conclude that Appellee's activities as a reservist rose to the level of "serving with" the armed forces under Phillips, 58 M.J. at 220, nor to show that the remaining statutory criteria were fulfilled, and thus there was no subject matter jurisdiction under Article 2(c), UCMJ. Morita, 73 M.J. at 560. It rejected the military judge's reliance on dicta from Morse, which predicated jurisdiction not on the plain language of Article 2, UCMJ, but rather on the commission of any act "related to" military duties. Morita, 73 M.J. at 561-62.

The CCA dismissed two of the seven specifications of the Article 123, UCMJ, forgery offense for lack of subject matter jurisdiction and modified the remaining five specifications to reflect only the forgeries committed while the court-martial had subject matter jurisdiction. Id. at 568-71. The CCA also dismissed the larceny offense because it could not determine if the panel convicted Appellee of two or more larcenies at a time when the court-martial had subject matter jurisdiction. Id. at

9

563-64, 568.  The CCA reassessed the sentence, imposing dismissal and confinement for three months.[3]  Id. at 567-68, 571.


IV.  DISCUSSION

We review questions of jurisdiction de novo.  United States v. Kuemmerle, 67 M.J. 141, 143 (C.A.A.F. 2009).  "Court-martial jurisdiction exists to try a person as long as that person occupies a status as a person subject to the [UCMJ]."  Rule for Courts-Martial 202 Discussion; see also Solorio v. United States, 483 U.S. 435, 439-40 (1987) (holding that military status is the sole test of jurisdiction); United States v. Ernest, 32 M.J. 135, 139-40 (C.M.A. 1991).  For reservists, military status is defined by and dependent upon Articles 2(a) and 2(c), UCMJ, which prescribe two alternative bases for court-martial jurisdiction.

Article 2(a), UCMJ, jurisdiction for a reservist hinges on whether the charged events occurred during active duty status or IDTs.  Article 2(a)(1), UCMJ, applies to reservists "lawfully called or ordered into, or to duty," while Article 2(a)(3),

---

[3] The CCA also held that forgery under Article 123, UCMJ, is a lesser included offense of the Article 132, UCMJ, offense -- forgery of signatures in connection with claims.  Id. at 564-67. Accordingly, the CCA set aside and dismissed the Article 132, UCMJ, offense on the grounds that the two charges were multiplicious.  Id. at 566-67.  Additionally, following a review of the post-trial delay issue, the CCA approved "only so much of the sentence as provides for a dismissal."  Id. at 568.

UCMJ, applies to "[m]embers of a reserve component while on inactive-duty training." For the purposes of Article 2(a), UCMJ, jurisdiction, "active duty is an all-or-nothing condition." Duncan v. Usher, 23 M.J. 29, 34 (C.M.A. 1986). A reservist is subject to jurisdiction under Article 2(a), UCMJ, "'from the date[]'" of activation, and answerable under the UCMJ for any offense committed thereafter. United States v. Cline, 29 M.J. 83, 85-86 (C.M.A. 1989). However, "Article 2(a)(1) does not delineate how a person is lawfully called to active duty for purposes of court-martial jurisdiction." Ernest, 32 M.J. at 139. While Article 2(a)(3), UCMJ, has not been the subject of much analysis, little analysis is required to conclude that the operative statutory language refers to, and thus is limited to, a "member[] of a reserve component" "while on inactive-duty training." See Robinson v. Shell Oil Company, 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous . . . ."). Second, Article 2(c), UCMJ, while not referencing reservists at all, extends jurisdiction "[n]otwithstanding any other provision of law" to "a person serving with an armed force" who "(1) submitted voluntarily to military authority; (2) met the mental competency and minimum

age qualifications . . . at the time of voluntary submission to military authority; (3) received military pay or allowances; and (4) performed military duties." "The phrase 'serving with' an armed force has been used to describe persons who have a close relationship to the armed forces without the formalities of a military enlistment or commission." Phillips, 58 M.J. at 220; see also United States v. McDonagh, 14 M.J. 415, 417 (C.M.A. 1983) (noting that Article 2(c), UCMJ, incorporated the "constructive enlistment" concept this Court previously employed when there was a formal defect in enlistment but the individual served with an armed force). But meeting that threshold criterion of "serving with" does not obviate the need to satisfy the additional statutory requirements, set forth in subsections (c)(1)-(4), which include, inter alia, receipt of military pay or allowances, and performance of military duties. United States v. Fry, 70 M.J. 465, 469 (C.A.A.F. 2012).

When challenged, the Government must prove jurisdiction by a preponderance of evidence. United States v. Oliver, 57 M.J. 170, 172 (C.A.A.F. 2002). The CCA noted that the record contains three AF Form 49s establishing that Appellee was approved to perform MPA active duty tours from November 14, 2005, to March 14, 2006; December 1, 2006, to March 20, 2007; and October 1, 2007, to January 28, 2008. Morita, 73 M.J. at 557-58. Those were the dates for which he was actually credited

12

and compensated, and Appellant was not charged with forging the AF Form 49s that approved his MPA tours. Id. at 559 n.11. The CCA held that the three AF Form 49s introduced at the trial level showing that Appellee was properly approved to perform three 120 MPA man-day tours constituted sufficient proof that Appellee was subject to court-martial jurisdiction under Article 2(a), UCMJ, for those three time periods. Id. at 557-58. The CCA found that the record as to his military status and performance of duties was "incomplete" for the remainder of the charged time frame. Id. at 558.

We agree that the AF Form 49s established the dates of Appellee's active duty service, irrespective of any informal arrangement made to permit him to work on other days for which he was not compensated and to which the AF Form 49s did not refer. Cf. Cline, 29 M.J. at 87 (finding that the appellant was under court-martial jurisdiction on a date for which he was receiving pay regardless of the time at which he actually reported). Appellee was lawfully in an active duty status, and subject to the UCMJ, pursuant to Article 2(a)(1) for offenses committed during the three approved MPA tour periods.

We do not agree that Appellee was otherwise subject to the UCMJ under Article 2(a), UCMJ, during the remaining time frames. The CCA noted that "[i]n its effort to prove [that] [Appellee] committed forgery . . . the Government introduced a limited

13

number of documents that also contained evidence of [Appellee]'s military status." Morita, 73 M.J. at 558; supra note 2. These documents were primarily purported records of IDTs. Morita, 73 M.J. at 558. The CCA determined that, regardless of whether they were forged, these documents showed Appellee was in military status during seven time frames under Article 2(a), UCMJ, in addition to the three 120 MPA man-day tours.[4] Id.

The CCA stressed that, other than the MPA periods of active duty, and the forged orders, there was no other evidence presented for the purpose of establishing Appellee's military status throughout the charged time periods. Id. Moreover, it concluded that it did not matter if he actually performed military duties in conjunction with forged orders, as "Article 2(a), UCMJ, conditions subject matter jurisdiction on the member's official status at the time of the offenses. It does not concern itself with how the member got into that status or whether he was doing official Government business pursuant to that status." Id. at 559.

---

[4] These documents purported to show that Appellee was on paid active duty training or IDTs for the following time frames: September 10, 2007, to September 12, 2007; February 11, 2008, to February 15, 2008; February 18, 2008, to February 22, 2008; February 25, 2008, to February 26, 2008; September 8, 2008, to September 12, 2008; September 15, 2008, to September 19, 2008; and September 22, 2008, to September 26, 2008. Morita, 73 M.J. at 559.

14

We are left to conclude, therefore, that the CCA based Article 2(a), UCMJ, jurisdiction for these additional periods on the mere fact of forged orders, without more. While no prior case from this Court establishes whether forged orders to active duty or to IDTs may place a reservist within Article (2)(a), UCMJ, we conclude that forged orders do not place a reservist in such a status.

Article 2(a)(1), UCMJ, requires that a member be "lawfully called or ordered" to active duty. A forged order to active duty has no legal effect on the duty of the reservist to report to active duty. Cf. United States v. Harrison, 5 M.J. 476, 480 (C.M.A. 1978) ("In the present case, there is no doubt as to the invalidity of the appellant's original enlistment contract [because he was underage] and its lack of legal effect to change his status from civilian to sailor."); Ryan v. Barkley, 342 F. Supp. 362, 364-65 (E.D. Pa. 1972) (finding that an active duty order issued contrary to the Marine Corps' regulations was void and granting a preliminary injunction staying activation of the order). Indeed, a forgery is the antithesis of a lawful order. Cf. United States v. Watson, 69 M.J. 415, 417 (C.A.A.F. 2011) (explaining that a "void administrative discharge, such as one obtained by fraud," has no legal effect and does not terminate court-martial jurisdiction). Further, Article 2(a)(3), UCMJ, extends jurisdiction over members of the reserve component

"while on inactive-duty training."  The forged orders did not in fact place Appellee "on inactive-duty training," and the record does not show that he performed IDT training pursuant to the forged orders during any of the periods referenced above. Morita, 73 M.J. at 558.

Nor can the understandable policy concerns detailed by the CCA be dispositive of the legal question before us.  That only reservists who meet the statutory requirements are subject to the UCMJ reflects Congress's determination that for other misconduct they are subject to the jurisdiction of the civilian courts.  See Phillips, 58 M.J. at 219-20 ("'[Article 2(c)] is not intended to affect reservists not performing active service or civilians.'" (quoting S. Rep. No. 96-197, at 122-23 (1979))); see also Morita, 73 M.J. at 560-61.  While this may deprive the military of jurisdiction over reservists who fraudulently obtained orders through forgery and benefited from them in some instances, they may be prosecuted by a U.S. Attorney under any one of several federal criminal and civil statutes and subjected to both criminal sanction and civil forfeitures upon conviction. See, e.g., False Claims Act, 31 U.S.C. §§ 3729-3733 (imposing liability for defrauding government programs); False Statements Accountability Act of 1996, 18 U.S.C. §§ 1001, 1515, 6005, 28 U.S.C. § 1365 (imposing liability for false statements or representations in connection with government matters).

Congress is understandably chary of the exercise of military jurisdiction over civilians unless they are, in fact, in a military status under Article 2, UCMJ.  See Willenbring v. Neurauter, 48 M.J. 152, 157-58 (C.A.A.F. 1998) (noting that the military has no court-martial jurisdiction over former servicemembers who have severed all ties with the military and are not serving with an armed force); cf. United States v. Denedo, 556 U.S. 904, 912 (2009) (stating that "it is for Congress to determine the subject matter jurisdiction of federal courts," including Article I courts).  We do not think that a forged order, without more, is sufficient to subject a reservist not in an actual military status to military jurisdiction under Article 2(a), UCMJ.  Cf. Solorio, 483 U.S. at 439.

This leaves us to consider whether Appellee was nonetheless subject to military jurisdiction under Article 2(c), UCMJ, for any period during which forged orders purported to place him in military status or any period, excepting the IMA tour days, during which he was subject to military jurisdiction under Article 2(a), UCMJ, during the charged offenses.  The threshold consideration for this analysis is the phrase "serving with," Article 2(c), UCMJ, and it "has been used to describe persons who have a close relationship to the armed forces without the formalities of a military enlistment or commission."  Phillips, 58 M.J. at 220 (citations omitted).

Appellant was not subject to jurisdiction under Article 2(c), UCMJ, during periods for which the CCA found that the Government did not proffer sufficient facts to show Appellee was "serving with" the armed forces. Morita, 73 M.J. at 560. These include the periods during which Appellee may (or may not) have performed MPA make-up time, the time during which Appellee was "under" forged orders and may, or may not have had any contact with the military at all,[5] and other times for which there is no documentation -- forged or otherwise -- showing military status. The CCA distinguished Appellee's case from Phillips, in which a reservist's criminal conduct took place while on base, on the travel day before she began her annual active duty training tour, and while receiving military pay and credit towards retirement. Morita, 73 M.J. at 560. In this case no such evidence was produced for any of the remaining time periods at issue. Id. According to the CCA, only one of the six factors identified in Phillips to determine if the appellant there was "serving with" the armed forces was present in Appellee's case,

---

[5] Indeed, to the extent the record shows Appellee's whereabouts during some of these periods it suggests that he was enjoying sporting events, such as a Notre Dame football game. This is not, therefore, a case where the record reflects that a reservist forged orders to active duty or IDT, reported and performed such duties, and obtained pay and allowances pursuant to those orders. That case, which would look much more like the theory under which we have found Article 2(c), UCMJ, jurisdiction for defective but "constructive enlistment[s]," McDonagh, 14 M.J. at 417, is not before us.

namely, the fact that he was a member of a reserve component. Id.  We agree with the CCA that this factor alone is not sufficient to find that Appellee was "serving with" the armed forces under Article 2(c), UCMJ.

Nor were the other statutory criteria for jurisdiction under Article 2(c), UCMJ, met.  For example, the CCA found that the "Government did not demonstrate that [Appellee] received any compensation or retirement credit for days on which he merely initiated the issuance of or completed travel forms (apart from the days where he was in proper Article 2(a), UCMJ, status)," 73 M.J. at 560, or establish that Appellee otherwise performed military duties during these times.[6]  Id. at 561.  Under these facts, where the Government's theory of the case was that Appellee was not performing military duties, but rather exploiting his knowledge of the system to generate orders and travel vouchers to support private boondoggles, we agree with the CCA that Appellee was not subject to jurisdiction under Article 2(c), UCMJ, during the remaining periods during which misconduct was alleged.

---

[6] We agree with the CCA's conclusion that the dicta in Morse is an incorrect basis for establishing jurisdiction under Article 2(c), UCMJ, "where the Government simply did not demonstrate how the appellant's criminal actions corresponded to genuine reserve obligations and periods of military service."  Morita, 73 M.J. at 562.  Actions incident to status as a reservist without more are simply insufficient to confer jurisdiction so broadly.

V. Decision

The first portion of the certified issue is answered in the negative.[7] We affirm the CCA with respect to its resolution that jurisdiction did exist over the misconduct that occurred within the dates of the three lawfully requested and approved 120 MPA man-day tours, Morita, 73 M.J. at 557-58, and that jurisdiction did not exist under Article 2(c), UCMJ, and Phillips for the remainder of the time. 73 M.J. at 560. We reverse the CCA with

---

[7] Given that the CCA held, in the alternative, that, based on its review of the documents the Government belatedly sought to introduce, "even if we considered the documents, we find they would not satisfy the Government's burden of proof as to jurisdiction sufficiently to affect out ultimate conclusion," United States v. Morita, No. ACM 37838, slip op. at 3-4 (A.F. Ct. Crim. App. Feb. 26, 2014) (denying the Government's motion for reconsideration en banc), there is no justiciable issue for us to resolve. See United States v. Clay, 10 M.J. 269, 269 (C.M.A. 1981) ("We have previously declined to resolve certified issues which would not result in 'a material alteration of the situation for the accused or for the Government.'" (quoting United States v. McIvor, 21 C.M.A. 156, 158, 44 C.M.R. 210, 212 (1972))). Further, Appellee's contention that certification of this question was improper under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2012), and 10 U.S.C. § 8037(d)(3) (2012), is without merit. Cf. United States v. Burns, 73 M.J. 407, 407-08 (C.A.A.F. 2014) (summarily disposing of the certified issue despite the appellee's argument that certification was improper because the Deputy Judge Advocate General signed the certified question before his retirement but it was filed by Major General (Maj Gen) Kenny after the Deputy Judge Advocate General's retirement (Appellee's Answer at 3-5, United States v. Burns, 73 M.J. 407 (C.A.A.F. 2014) (No. 14-5004))). Maj Gen Kenny was Chief of Acquisitions Law -- a major division in the Office of the Judge Advocate General, which fulfills the statutory requirements of Article 67(a)(2), UCMJ, and 10 U.S.C. § 8037(d)(3). See Appellant and Cross-Appellee's Motion to Supplement the Record, United States v. Morita, No. 14-5007, (C.A.A.F. June 30, 2014).

respect to those periods related to forged active duty, IDT, or travel orders.  Id. at 558-59 n.11.  The decision of the Air Force Court of Criminal Appeals is affirmed in part and reversed in part.  The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for reassessment of the sentence or to order a rehearing on sentencing consistent with this decision.