*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

### UNITED STATES
Appellee

**v.**

### James M. HALE, Lieutenant Colonel
United States Air Force, Appellant

### No. 18-0162
Crim. App. No. 39101

Argued October 23, 2018—Decided February 6, 2019

Military Judges: Mark W. Milam and Shelly W. Schools

For Appellant: *Major Allen S. Abrams* (argued); *Lieutenant Colonel Anthony D Ortiz.*

For Appellee: *Captain Peter F. Kellett* (argued); *Colonel Julie L. Pitvorec, Lieutenant Colonel Joseph J. Kubler, and Mary Ellen Payne,* Esq. (on brief).

Judge SPARKS delivered the opinion of the Court, in which Chief Judge STUCKY and Judges RYAN and MAGGS joined. Judge OHLSON filed a separate opinion concurring in part and dissenting in part.

———————————

Judge SPARKS delivered the opinion of the Court.

This case arises out of the general court-martial of a reserve officer, Lieutenant Colonel (O-5) James M. Hale (Appellant). Contrary to his pleas, members of the court-martial convicted Appellant of four specifications of attempted larceny, one specification of making a false official statement, and three specifications of larceny in violation of Articles 80, 107, and 121 Uniform Code of Military Justice (UCMJ), §§ 10 U.S.C. 880, 907, 921. Appellant was sentenced to one month of confinement, dismissal, and forfeiture of all pay and allowances. The convening authority approved the sentence. Upon review, the United States Air Force Court of Criminal Appeals set aside one larceny conviction and instead affirmed the lesser included offense (LIO) of attempted larceny.[1] The lower

---

[1] The lower court also altered the date in another larceny specification by exceptions and substitutions.

court then affirmed the modified findings and the reassessed sentence.

The lower court found as a matter of law that personal jurisdiction does not exist outside of the hours of inactive-duty training. Here, we review the lower court's conclusion that the court-martial had sufficient jurisdiction over Appellant for two attempted larceny specifications: Specification 3 of Additional Charge II and Specification 2 of Additional Charge 1 (affirmed as the LIO, attempted larceny). Appellant also questions whether the military judge erred in instructing the members that they could convict Appellant for conduct "on or about" the dates alleged in a number of the charged specifications.[2]

We hold that the lower court did not err in upholding the two attempted larceny convictions. The members were entitled to consider evidence of conduct that occurred while Appellant was not subject to court-martial jurisdiction and this circumstantial evidence, coupled with evidence of Appellant's actions when he was subject to jurisdiction, proved sufficient to uphold both attempted larceny

---

[2] This Court granted review of the following assigned issues:

I. The lower court found as a matter of law that personal jurisdiction does not exist outside of the hours of inactive-duty training. The lower court proceeded to find personal jurisdiction existed over Appellant because he was "staying" with his in-laws. Was this error?

II. Whether the lower court erred when it concluded the military judge correctly instructed the members they could convict Appellant for conduct "on or about" the dates alleged in each specification.

And the following specified issue:

III. Whether the lower court erred in concluding the court-martial had jurisdiction over Specification 2 of Additional Charge I, as modified to affirm the lesser included offense of attempted larceny.

convictions. We also conclude that, regardless of whether the military judge erred by including the "on or about" language in the instructions to the members, Appellant failed to carry his burden to prove that any material prejudice to his substantial rights resulted from such instructions.[3]

## Background[4]

Appellant was an Air Force reserve officer living in Colorado but attached to a squadron in San Antonio, Texas. Between June 26, 2011, and November 19, 2013, Appellant traveled from Colorado to Texas for seven periods of reserve duty. While in Texas, Appellant was engaged in either active duty or inactive duty training (IDT). IDTs consisted of two four-hour work blocks in a given day, from 8:00 a.m. through noon and from 1:00 p.m. through 5:00 p.m. (with the final day of the tour sometimes consisting of just one 8:00 a.m. through noon block). For each four-hour block, Appellant was paid and received one point towards retirement.

In Texas, Appellant stayed with his in-laws, Mr. and Mrs. Vernon. The charges in question stem from Appellant's claims for lodging reimbursement for these stays, despite the fact that the Joint Federal Travel Regulations (JFTR) at the time prohibited reimbursement for lodging with family. Following each stay, Appellant created false receipts indicating payment to either Mr. Vernon or "Vernon Guest Suites." He submitted these receipts along with travel vouchers seeking reimbursement for lodging expenses. Appellant's in-laws never charged him to stay with them. Instead, he would give Mr. Vernon a check for each stay which Mr. Vernon eventually returned to Appellant uncashed. Appellant later deposited these checks into the Vernon's bank account himself and then wired the money

---

[3] With respect to the jurisdiction issues (Issues I and III), Appellant's specific prayer for relief asks that we set aside the findings of guilty for Specification 2 of Additional Charge I and Specification 3 of Additional Charge II. As for the instructions issue, Appellant's specific prayer for relief requests that we set aside the findings of guilty for Charge II and its specification, Specifications 1 and 2 of Additional Charge I, and Additional Charge II and its specifications.

[4] Here we rely extensively on the lower court's clear and detailed factual description of the case.

back into his own account. As the investigation into Appellant progressed, the timing of these deposits aligned with critical stages in the investigation as officials noted the absence of or requested copies of the canceled checks. The government paid Appellant for five of the seven stays, a total of $25,071.00.

Appellant was charged with eight specifications. The charging language in each specifies alleged conduct committed "on or about" a certain date or dates. When the military judge instructed members on the elements of each charge, he used the same "on or about" language.

Further facts relevant to the specific charges are developed below.

## Analysis

### *Jurisdiction*

*Relevant Law*

We conduct a de novo review of jurisdiction questions. *EV v. United States*, 75 M.J. 331, 333 (C.A.A.F. 2016). When challenged, the government must prove jurisdiction by a preponderance of evidence. *United States v. Morita*, 74 M.J. 116, 121 (C.A.A.F. 2015) *(*citing *United States v. Oliver,* 57 M.J. 170, 172 (C.A.A.F. 2002)).

"An inquiry into court-martial jurisdiction focuses on … whether the person is subject to the UCMJ at the time of the offense." *United States v. Ali*, 71 M.J. 256, 261 (C.A.A.F. 2012). Court-martial jurisdiction is determined by Article 2, UCMJ, 10 U.S.C. § 802 (2012).[5] *Morita,* 74 M.J. 116, helped

---

[5] The jurisdictional questions in this petition will have limited application given changes by Congress concerning Article 2(a)(3)'s jurisdiction over IDTs. The changes extend jurisdiction to (1) members traveling to and from the IDT training site; (2) intervals between consecutive periods of IDT on the same day, pursuant to orders or regulations; and (3) intervals between IDTs on consecutive days, pursuant to orders or regulations. National Defense Authorization Act (NDAA) for Fiscal Year 2017, Pub. L. No. 114-328, § 5102, 130 Stat. 2000, 2921 (2016). These changes go into effect in January 2019 (first day of the first calendar month that begins no later than two years after the NDAA date of enactment). *Id.* § 5542.

to lay down a baseline for when jurisdiction exists over reserve members. In *Morita*, *id.* at 120, this Court clarified that, for reservists, jurisdiction hinges on satisfying Article 2(a) or Article 2(c), UCMJ. Article 2(c) "require[s] that the reservist be, as a threshold matter, 'serving with' the armed forces at the time of the misconduct, and meet the other four criteria set forth in the statute."[6] 74 M.J. at 118. Jurisdiction continues until "active service has been terminated." Article 2(c), UCMJ. Article 2(a)(3), UCMJ, in relevant part, extends jurisdiction to "[m]embers of a reserve component while on inactive-duty training." In *Morita*, this Court determined that the military did not have jurisdiction over a reservist when he had forged his active duty and IDT orders, stating that simply being a member of a reserve component "is not sufficient to find that Appellee was 'serving with' the armed forces." 74 M.J. at 123. In *United States v. Phillips*, this Court concluded that jurisdiction over a reservist did cover the travel day prior to her reporting for active duty. 58 M.J. 217, 220 (C.A.A.F. 2003). The decision emphasized that determining whether someone is serving with the military requires a "case-specific analysis of the facts" and requires a "more direct relationship than simply accompanying the armed forces in[to] the field." *Id.*

Article 121(a)(1), UCMJ, in relevant part, identifies larceny as wrongfully taking, obtaining, or withholding "with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use."

Article 80, UCMJ, defines an attempted offense as "[a]n act, done with specific intent, to commit an offense … amounting to more than mere preparation and tending, even though failing, to effect its commission." The elements include:

> (1) that the accused did a certain overt act; (2) that the act was done with the specific intent to commit a certain offense under the code; (3) that the act

---

[6] The other four Article 2(c), UCMJ, criteria are:

> (1) submitted voluntarily to military authority;
> (2) met mental competency and minimum age qualifications …;
> (3) received military pay or allowances; and
> (4) performed military duties.

amounted to more than mere preparation; and (4)
that the act apparently tended to effect the com-
mission of the intended offense.

*United States v. Payne*, 73 M.J. 19, 24 (C.A.A.F. 2014)
(citation omitted). More than mere preparation is
interpreted as requiring that the accused take a "substantial
step" toward committing the crime. *Id.* This Court has
distinguished attempt as going beyond "devising or
arranging the means or measures necessary for the
commission of the offense" and, instead, engaging in a
"direct movement toward the commission after the
preparations are made." *United States v. Schoof*, 37 M.J. 96,
103 (C.M.A. 1993) (internal quotation marks omitted)
(citation omitted). The explanation section of Article 80,
UCMJ, states that "[t]he overt act need not be the last act
essential to the consummations of the offense." *Manual for
Courts-Martial, United States* pt. IV, para. 4.c.(2) (2012 ed.)
(*MCM*).

In *United States v. Winckelmann*, this Court highlighted
the "elusive line separating mere preparation from a
substantial step." 70 M.J. 403, 407 (C.A.A.F. 2011) (internal
quotation marks omitted) (citation omitted). We favorably
quoted several federal cases concerning the contours of a
substantial step:

> Federal courts of appeals have defined a "substan-
> tial step" as "more than mere preparation, but less
> than the last act necessary before actual commis-
> sion of the crime." *See, e.g., United States v. Cham-
> bers,* 642 F.3d 588, 592 (7th Cir. 2011). We have
> adopted a similar approach. *See, e.g., United States
> v. Byrd,* 24 M.J. 286, 290 (C.M.A. 1987) (" '[A] sub-
> stantial step must be conduct strongly corrobora-
> tive of the firmness of the defendant's criminal in-
> tent.' ") .... Accordingly, the substantial step must "
> 'unequivocally demonstrat[e] that the crime will
> take place unless interrupted by independent cir-
> cumstances.' " *United States v. Goetzke,* 494 F.3d
> 1231, 1237 (9th Cir. 2007).

*Id.* (alterations in original) (citations omitted). We
recognized that a substantial step could be comprised of

something as benign as travel, arranging a meeting, or making hotel reservations. *Id.*[7]

*Specification 3 of Additional Charge II*

In Specification 3 of Additional Charge II, Appellant was charged with and convicted of attempting to commit larceny on or about November 19, 2013. Appellant completed a series of IDTs, working from 8:00 a.m. through noon and again from 1:00 p.m. through 5:00 p.m. on November 4 through 8; November 12 through 15; and November 18 through 19, 2013, and working a single 8:00 a.m. through noon block on November 20. He stayed with his in-laws during this time and wrote them a check for his stay dated November 20, though the Government was not able to establish exactly what time of day the check was written. On December 3, Appellant submitted his final travel voucher[8] with a receipt he had manufactured for "Vernon Guest Suites" requesting reimbursement for $1,870.00.

We agree with the lower court's finding that, based on Article 2, UCMJ, and supporting case law, no authority existed at the time of the offenses to extend military status to Appellant while engaged in IDTs beyond the designated four-hour blocks of IDT time. Article 2(a)(3) very clearly extends jurisdiction to "[m]embers of a reserve component *while on inactive-duty training*." (Emphasis added.) As the lower court reasoned:

> Unlike other types of reserve duty, an IDT is not a tour but a block of time. Specifically, it is a designated "four-hour period of training, duty or instruction." Air Force Instruction (AFI) 36-2254V1, *Reserve Personnel Participation*, ¶ 4.1.1 (26 May 2010). The member performing the IDT is paid for

---

[7] In *Winckelmann*, this Court ultimately decided that a sentence written during an on-line chat reading "u free tonight" was "simply too preliminary" to constitute a substantial step towards underage enticement. 70 M.J. at 408 (internal quotation marks omitted) (citation omitted).

[8] The submitted voucher lists lodging dates between October 3 and October 20. However, because Appellant's duty orders cover the period from November 3 to November 20, we assume that the incorrect month listed was a clerical error. The lower court found that on December 3, 2013, Appellant created a receipt for his stay and submitted that receipt with his claim for reimbursement.

> and receives a point for that designated four-hour
> block of time. Appellant was no exception. He was
> not receiving "regular pay" as the Government sug-
> gests. Rather, he received pay and points solely for
> the IDT blocks he was authorized to complete.

*United States v. Hale*, 77 M.J. 598, 604 (A.F. Ct. Crim. App.
2018); *see also United States v. Wolpert*, 75 M.J. 777 (A. Ct.
Crim. App. 2016) (jurisdiction does not exist over a reserve
member who committed criminal acts between periods of
IDT).

The lower court determined that Appellant's pattern of
previous behavior (this was his seventh stay with his in-
laws, with the previous six resulting in fraudulent requests
for reimbursement for lodging) taken as a whole
demonstrated the "firmness of Appellant's criminal intent."
*Hale*, 77 M.J. at 605 (internal quotation omitted) (citation
omitted). The lower court concluded that this evidence of
Appellant's intent, coupled with the act of staying with his
in-laws while he completed his IDTs, constituted the
substantial step necessary for an attempted larceny. *Id.* at
605–06.

Appellant takes issue with the lower court's
interpretation of the concept of *staying* with his in-laws.
Appellant's view is that he was only *staying* with his in-laws
when he was physically in their home, for example on days
off or during the evenings between his IDT blocks.
Therefore, under his view, the act of staying with the in-
laws could only occur during periods he was not subject to
court-martial jurisdiction. The Government counters that
the plain meaning and ordinary usage of the term "staying"
in this context means "to live for awhile" or "to live in a place
for a short time as a visitor" (internal quotation marks
omitted) (citations omitted). Therefore, staying is not strictly
limited to the period of time when a guest is physically
present but rather spans the full scope of time encompassing
a given visit.[9] We also adopt the common understanding of
the term staying. We therefore conclude that the act of
staying with the in-laws spanned the entire period of time

---

[9] When questioned during the command-directed investiga-
tion, Appellant himself agreed that he did "stay" with his in-laws
every time he came to San Antonio for reserve duty and that he
did "stay" for the entire time period of his reserve duty.

during which Appellant resided with them, including both
the actual IDT blocks and the gaps between them.

We agree with the lower court that simply staying with
the in-laws, by itself, would not be enough to establish a
substantial step. However, we believe that Appellant's other
actions taken during periods he was not subject to the
UCMJ could have been considered by the members to
establish Appellant's intent while staying with his in-laws.
This is similar to how members are permitted to consider
evidence of other acts admitted under Military Rule of
Evidence 404(b) to prove the requisite intent for an offense.
*See MCM* pt. IV, para. 46.c.(1)(f)(ii) (2012 ed.) ("An intent to
steal may be proved by circumstantial evidence."). In order
to establish attempted larceny, it is not necessary that every
step leading up to or following that attempt occur at times
where the Appellant is subject to the UCMJ, so long as some
element of the offense occurs during such times. All that
Article 80, UCMJ, requires is commission of a single act
during IDT or active duty, provided that the act is done with
the specific intent of committing a larceny, that the act
amounts to more than mere preparation, and that the act
tends to effect the commission of a larceny. *Cf.*, *United
States v. Kuemmerle*, 67 M.J. 141, 144 (C.A.A.F. 2009)
(finding jurisdiction over the appellant's distribution of child
pornography offense where one of the two acts necessary to
establish the offense (i.e., posting the image) occurred prior
to the appellant entering active duty because his subsequent
decision to keep the image posted occurred while he was
subject to the UCMJ).

For this offense, the related evidence the members could
have considered on the issue of Appellant's intent included
the false receipt Appellant created for a stay at "Vernon
Guest Suites," the travel voucher submitted December 3,
and a check he wrote to Randall Vernon on November 20,
2013. The members also could have considered evidence of
the six other occasions upon which Appellant followed a
similar pattern: staying with his in-laws and then
submitting false receipts and travel vouchers in order to
claim lodging reimbursement for which he was not eligible.
Thus, the act of staying with his in-laws with the intent to
defraud the government was more than simply an isolated
and unimportant circumstance. It was the sine qua non for
Appellant's travel fraud scheme.

*Specification 2 of Additional Charge I*

In Specification 2 of Additional Charge I, Appellant was charged with and convicted of committing larceny on or about May 16, 2012, and September 30, 2012. Between May 16, 2012, and September 30, 2012, Appellant was on active duty orders. He stayed with his in-laws during that time period and, prior to going on active duty, set up a series of automatic interim partial payments to reimburse him for lodging expenses. Four interim payments were then deposited into his bank account during his active duty period (June 14, July 16, August 13, and September 12). He submitted a pre-travel authorization form on May 3, 2012, and created a receipt for the stay with his in-laws on September 30, 2012. He also wrote checks to his in-laws dated June 30, August 31, and September 30, 2012. Appellant then performed IDT duties, working 8:00 a.m. through noon and 1:00 p.m. through 5:00 p.m. blocks between October 1 through 5, October 9 through 12, and October 15 through 17. Appellant submitted his travel voucher and the receipt to his supervisor on October 2 and he received his final payment on October 12.

The lower court found that, as with the November 19, 2013, offense, jurisdiction did not exist when Appellant was engaged in IDTs except during the four-hour working blocks. The court therefore concluded that, because the receipt of interim payments and staying with his in-laws that occurred during the active duty period were not sufficient to constitute a completed larceny, the court-martial did not have jurisdiction to sustain the larceny conviction. However, the lower court did conclude that jurisdiction existed for the lesser included offense of attempted larceny and affirmed a finding of guilty of that offense.

This specification requires a substantial step analysis similar to the one conducted above. Here, Appellant not only stayed with his in-laws—on this occasion the third stay for which he claimed lodging reimbursement—but also received automatic partial interim lodging payments from the military and created a fraudulent receipt for his stay with the Vernons, all while on active duty. In addition, the members were entitled to consider as circumstantial evidence events that took place while Appellant was not subject to jurisdiction. This additional evidence included

submission of the travel voucher and receipt of final payment as well as arranging for interim payments prior to going on active duty. We conclude that all this evidence, considered together, is sufficient to establish the requisite substantial step towards commission of the offense of attempted larceny.

### *Improper Instruction*

"The military judge shall give the members appropriate instructions on findings." Rule for Courts-Martial 920(a). "This Court presume[s] that the panel followed the instructions given by the military judge." *United States v. Haverty*, 76 M.J. 199, 208 (C.A.A.F. 2017) (alteration in original) (internal quotation marks omitted) (citation omitted).

"Whether a panel was properly instructed is a question of law reviewed de novo." *United States v. Medina,* 69 M.J. 462, 465 (C.A.A.F. 2011) (internal quotation marks omitted) (quoting *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008)). In this case, the military judge instructed the members on the elements of the charged offenses, including the "on or about" language. Defense counsel did not object to the instructions at the time they were given. "Where there was no objection to the instruction at trial, we review for plain error." *United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013).

Under plain error review, "Appellant has the burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *United States v. McClour*, 76 M.J. 23, 25 (C.A.A.F. 2017) (internal quotation marks omitted) (quoting *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014)). "[T]he failure to establish any one of the prongs is fatal to a plain error claim." *Id.* (alteration in original) (internal quotation marks omitted) (citation omitted). We determine that Appellant has failed to carry his burden with regard to the third prong. Whether or not the military judge erred in giving instructions on the "on or about" language, Appellant has not proven any material prejudice to his substantial rights.

In his prayer for relief, Appellant asks that this Court set aside findings for five specifications due to instructional

error: Charge II and its specification; Additional Charge I, Specifications 1 and 2; and Additional Charge II, and its specifications. Additional Charge I, Specification 1, is a larceny conviction. The others are attempted larceny convictions.

Appellant has not established that the military judge's instructions in any way impacted the members' decision-making process on these offenses. Though there were multiple steps involved in orchestrating the taking of the money, the dates of those steps were well documented through travel vouchers, duty orders, checks, bank statements, etc., which were admitted into evidence. Those dates were not ambiguous and the members were not relying on witness testimony that was open to interpretation. The members were not asked to consider a separate crime that may have occurred outside the scope of the court's jurisdiction. Rather, the charges here involved concrete acts occurring on concrete dates. Appellant provided no reason to suspect the members did not adhere to the admitted evidence when reaching their verdict.

With regard to the attempted larceny convictions, our decision above on issues I and III establishes that Appellant staying with his in-laws, coupled with circumstantial evidence of acts committed when he was not subject to jurisdiction, is sufficient to constitute a substantial step towards completed larceny. Nothing in Appellant's argument or in the record suggests that members considered other, impermissible, evidence.

With regard to Additional Charge I, Specification 1, the larceny conviction, the charge sheet reads "between on or about 26 June 2011 and on or about 30 September 2011." Appellant was on active duty and therefore under military jurisdiction from June 26, 2011, through September 30, 2011. While he was on active duty, Appellant stayed with his in-laws. He also received interim payments on July 26, August 25, and September 26. He wrote a check to the Vernons on September 27 and created a false receipt for lodging dated September 29. We consider all this evidence sufficient to support a conviction of a completed larceny. Any assumption that the members based their conviction on other evidence of acts taking place when Appellant was not subject to jurisdiction would be purely speculative.

Both parties spent some time analyzing to what degree the Government depended upon the "on or about" language in its closing argument. The Government did reference the "on or about" language. However, given the above points and the fact that the members were clearly instructed that arguments are not evidence, we are not convinced that the remarks made during closing arguments played a significant enough role to have prejudiced Appellant.

## Decision

We conclude that the court-martial had sufficient jurisdiction over Appellant to support both challenged attempted larceny convictions. In addition, Appellant has failed to prove any material prejudice stemming from the military judge's instructions to the members.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judge OHLSON, concurring in part and dissenting in part.

Thankfully, the jurisdictional puzzle confounding the Court in the instant case soon will be sorted out. The Military Justice Review Group (MJRG), which was so ably chaired by Senior Judge Andrew Effron, recognized the vagaries inherent in a system whereby jurisdiction over reservists performing inactive duty training (IDT) could—like an office light switch—turn on and off several times during the course of a single work day.[1] *See* Office of the General Counsel, Dep't of Defense, Report of the Military Justice Review Group 154–55 (Dec. 22, 2015), http://ogc.osd.mil/mjrg.html. Therefore, upon the MJRG's recommendation, Congress amended Article 2(a)(3), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 802(a)(3), so as to eliminate jurisdictional gaps that previously arose within the interstices of blocks of time dedicated to inactive duty training. National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 5102, 130 Stat. 2000, 2894–95 (2016). Thus, some much needed rationality is now in the process of being imposed regarding court-martial jurisdiction over reservists.

In the instant case, however, the old jurisdictional rules apply. As explained below, in construing those rules, and in applying the law to the relevant facts, I conclude that the jurisdictional light switch, so to speak, was in the "off" position at the time Appellant took the steps necessary for the commission of one of the attempted larceny offenses. Further, I conclude that the military judge's "on or about" instruction constituted plain error because it directly implicat-

---

[1] Although this brief and episodic form of jurisdiction may seem quite odd, this is not a point on which the majority and I disagree. As the majority correctly notes in its opinion, "[N]o authority existed at the time of the offenses to extend military status to [servicemembers who were] engaged in [inactive duty training] beyond the designated four-hour blocks of IDT time." *United States v. Hale*, __ M.J. __ (7) (C.A.A.F. 2019). The majority opinion also favorably and correctly cites a United States Army Court of Criminal Appeals decision that holds that "jurisdiction does not exist over a reserve member who committed criminal acts between periods of IDT." *Id.* at __ (8) (citing *United States v. Wolpert*, 75 M.J. 777 (A. Ct. Crim. App. 2016)).

ed jurisdictional issues in this case and improperly authorized the panel members to convict Appellant of the attempted larceny charge even if the offense occurred when he was not in a military status. Accordingly, unlike my colleagues in the majority, I would hold that Appellant's conviction for that offense must be set aside and the specification must be dismissed. Therefore, I respectfully dissent.

## OVERVIEW

This travel fraud case resulted in Appellant being charged with a number of larceny and attempted larceny offenses. One of these attempted larceny offenses is charged in Specification 3 of Additional Charge II. This specification alleges that Appellant "did within the continental United States, on or about 19 November 2013 attempt to steal money, military property, of a value of over $500.00, the property of the United States Government," in violation of Article 80, UCMJ, 10 U.S.C. § 880 (2012). At the time of this charged misconduct, Appellant, an Air Force reservist, was on IDT for multiple four-hour blocks of time between November 3, 2013, and November 20, 2013. Central to this case is the fact that while performing his IDT at Joint Base San Antonio-Lackland, Texas, Appellant elected to lodge at the home of his in-laws.

A panel of officer members sitting as a general court-martial convicted Appellant of several offenses, including the attempted larceny offense cited above. The members reached their verdict after the military judge instructed them as follows:

> [Y]ou must be convinced by legal and competent evidence beyond reasonable doubt:
>
> (1) That, *on or about* 19 November 2013 … the accused did a certain act, that is: stay at the private residence of his in-laws, …, *write a check to* [*his father-in-law*]*, and/or create a lodging receipt reflecting his stay at the* [*in-laws'*] *residence*;
>
> ….
>
> (3) That *the acts* amounted to more than mere preparation, that is, they were a substantial step and a direct movement toward the commission of the intended offense.

(Emphasis added.)

The majority concludes that: (1) there was court-martial jurisdiction over the attempted larceny offense charged in Specification 3 of Additional Charge II (Issue I); and (2) the military judge's "on or about" instruction with respect to this specification did not amount to plain error (Issue II). As outlined below, I part ways with both of these conclusions.

**I.**

Turning first to Issue I, this Court must determine whether the court-martial had jurisdiction over the attempted larceny offense that was alleged to have occurred "on or about" November 19, 2013. "[C]ourts-martial may only exercise jurisdiction over a servicemember 'who was a member of the Armed Services *at the time of the offense* charged.'" *United States v. Kuemmerle*, 67 M.J. 141, 143 (C.A.A.F. 2009) (emphasis added) (quoting *Solorio v. United States*, 483 U.S. 435, 451 (1987)). Stated differently, "Article 2(a), UCMJ, jurisdiction for a reservist hinges on whether *the charged events* occurred during active duty status or IDTs." *United States v. Morita*, 74 M.J. 116, 120 (C.A.A.F. 2015) (emphasis added). I interpret these precedents to mean that a reservist is not subject to UCMJ jurisdiction if the reservist leaves a military status *before all of the elements of a criminal offense are met*.

In terms of the attempted larceny offense at issue in the instant case, this Court has identified "four elements of attempt," including "that the act amounted to more than mere preparation." *United States v. Payne*, 73 M.J. 19, 24 (C.A.A.F. 2014) (citing *Manual for Courts-Martial, United States* pt. IV, para. 4.b (2012 ed.)). In other words, Appellant must "ha[ve] taken a substantial step—some overt act, beyond mere preparation—toward accomplishing" the larceny. *United States v. Schoof*, 37 M.J. 96, 102 (C.M.A. 1993). There is no "litmus test" for determining whether a substantial step exists, and the line between preparation and substantial step is "elusive." *Id.* at 103 (citation omitted) (internal quotation marks omitted). However, the Supreme Court has stated that "*the mere intent* to violate a federal criminal statute is not punishable as an attempt unless it is accompanied by *significant* conduct." *United States v. Resendiz-*

*Ponce*, 549 U.S. 102, 107 (2007) (emphasis added). Indeed, this Court has recognized that the "substantial step must *unequivocally* demonstrat[e] that the crime will take place unless interrupted by independent circumstances." *United States v. Winckelmann*, 70 M.J. 403, 407 (C.A.A.F. 2011) (emphasis added) (citation omitted) (internal quotation marks omitted).

Applying the above law to the relevant facts, I conclude that Appellant's facially benign act of staying with his in-laws while performing IDT does not constitute "a substantial step." After all, Appellant needed a place to stay for his temporary duty, and he was permitted to stay with family members—although he could not legally seek reimbursement for this stay. This single facially benign act while in a military status did not "unequivocally demonstrat[e] that the crime [would] take place unless interrupted by independent circumstances." *Id.* (citation omitted) (internal quotation marks omitted); *see also United States v. Presto*, 24 M.J. 350, 352 (C.M.A. 1987) (concluding that conduct "tend[ing] to corroborate appellant's criminal intent" did not constitute a substantial step).

I recognize, as the majority and the lower court point out, that six other larcenies or attempted larcenies occurred when Appellant previously stayed with his in-laws. However, because Appellant was authorized to stay with family for his IDT, his mere act of staying with his in-laws in November 2013—which was unaccompanied by any other conduct during his time in military status that was consistent with committing a larceny—does not demonstrate the firmness of his intent to commit that offense. I also recognize that Appellant engaged in acts outside of his military status that, if taken during his IDT, would have established a substantial step while he was subject to court-martial jurisdiction. However, there is no court-martial jurisdiction if the acts necessary to commit a crime occur *after* an accused has left his military status; to be subject to court-martial jurisdiction, the substantial step must occur *during* an accused's IDT status.

In this particular case, it logically follows that because Appellant did not take a substantial step towards commit-

ting a larceny offense during IDT, this element of the attempt offense was not satisfied—and thus an attempted larceny was not completed—during the time that Appellant was in a military status. Therefore, there was no court-martial jurisdiction for this attempt offense. *See Morita*, 74 M.J. at 120 ("Article 2(a), UCMJ, jurisdiction for a reservist hinges on whether the charged events occurred *during* … IDTs." (emphasis added)). Accordingly, I would set aside the findings with respect to Specification 3 of Additional Charge II and dismiss the specification.

## II.

Even if the majority is correct that there is court-martial jurisdiction over the attempted larceny offense alleged in Specification 3 of Additional Charge II, I conclude that the finding of guilty for this specification should be set aside because the military judge plainly erred by instructing the members that Appellant could be convicted if he committed the larceny "on or about 19 November 2013."

The use of "on or about" in a military judge's instructions "generally connote[s] any time within a few weeks of the 'on or about' date." *United States v. Brown*, 34 M.J. 105, 110 (C.M.A. 1992), *overruled on other grounds by United States v. Reese*, 76 M.J. 297 (C.A.A.F. 2017). In the instant case the problem with the military judge's "on or about" instruction arises because it was given in the context of a specification where court-martial jurisdiction was clearly implicated. Court-martial jurisdiction is a binary proposition—it is either there or it is not. *Morita*, 74 M.J. at 120 ("[A]ctive duty is an all-or-nothing condition." (citation omitted) (internal quotation marks omitted)). Therefore, the military judge needed to focus his instructions on the precise dates when Appellant was on IDT. *Cf. United States v. Thompson*, 59 M.J. 432, 440 (C.A.A.F. 2004) (requiring a military judge "to provide the members with instructions that focused their deliberations on a much narrower period of time" to ensure they did not convict on an offense that fell outside of the statue of limitations).

Because the military judge's "on or about" instructional language did not limit the attempt offense to the IDT period when the court-martial had jurisdiction, the military judge

permitted the members to convict Appellant of an attempted larceny even if it occurred when he was no longer in a military status (i.e., when the military had no court-martial jurisdiction over Appellant). This point is underscored by the fact that the military judge's instruction listed three acts as part of the attempted larceny offense with which Appellant was charged—staying with his in-laws, writing a check to his father-in-law, and creating a fraudulent lodging receipt. However, the evidence in the record fails to establish that two of these acts occurred while Appellant was in an IDT status.[2] Indeed, the Government's appellate brief appears to concede that Appellant's acts of writing a check and creating a lodging receipt occurred *after* he was no longer in an IDT status and therefore not subject to the UCMJ. Under these circumstances, the instructions improperly permitted the members to convict Appellant of an attempted larceny that was not actually completed until *after* Appellant had left his military status.[3] Therefore, I conclude that the military judge clearly or obviously erred when instructing the members in this manner.

I further conclude that this clearly erroneous "on or about" instruction prejudicially impacted the members' deliberations. *See United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017) (explaining there is material prejudice for plain error analysis when there is a reasonable probability that the outcome would have been different absent the er-

---

[2] In the context of the military judge's and lower court's jurisdictional analyses, neither the military judge nor the lower court found that the writing of the check or the creation of the lodging receipt occurred while Appellant was in a military status. The majority opinion similarly recognizes that the Government did not establish the time of day that Appellant wrote the check. Thus, there is no evidentiary basis to conclude that all of the necessary acts for the commission of an attempted larceny offense occurred when the military had court-martial jurisdiction over Appellant.

[3] Because the military judge's "on or about" instruction specifically allowed the members to consider conduct when Appellant was no longer in a military status, the military judge's general instruction about court-martial jurisdiction did not remedy the error of allowing the members to convict for an offense completed after Appellant left his military status.

ror). The Government did not rely solely on Appellant's act of staying with his in-laws when seeking a conviction for the attempted larceny offense. Instead, trial counsel's findings argument pointed to conduct that occurred when Appellant was not in a military status—writing a check, creating a lodging receipt, and creating and submitting the final claim for reimbursement. And, as already stated, the military judge also instructed the members that they could consider two of these acts in determining whether there was "more than mere preparation"—despite the fact that these two acts occurred during a period when Appellant was not in a military status. The members were thereby incorrectly left with the impression that they could find a substantial step based on acts that occurred after Appellant had left his military status. This stands in direct contradiction with the jurisdictional requirement that the substantial step, and thus the crime of attempted larceny, must have been completed while Appellant was in a military status.

Finally, as suggested by my discussion of Issue I, it is not a foregone conclusion that the members would have found that Appellant's facially benign act of staying with his in-laws by itself constituted a substantial step.[4] Because the military judge's "on or about" instruction improperly authorized the members to find a substantial step based on conduct that occurred after Appellant had left a military status, and because trial counsel's findings argument also relied on such conduct in seeking a conviction, there is a reasonable probability that, but for the instructional error, the members would have reached a different outcome. Therefore, even if there is court-martial jurisdiction over Specification 3 of Additional Charge II, Appellant has established that the military judge plainly erred in providing the "on or about" instruction with respect to this specification.[5]

---

[4] At oral argument, the Government even conceded that the mere act of staying at the in-laws without more is legally insufficient to constitute an attempt.

[5] Although I find plain instructional error with respect to Specification 3 of Additional Charge II, I concur with the majority's conclusion that the instructional error was not plainly erroneous as to the other charges and specifications because Appellant

### III.

For the reasons set forth above, I respectfully dissent from two portions of the majority opinion.[6] First, I conclude that the court-martial lacked jurisdiction over the attempted larceny offense charged at Specification 3 of Additional Charge II and therefore dissent from the majority's resolution of Issue I. On these grounds I would set aside Appellant's conviction for that offense and dismiss the specification. Second, even assuming the court-martial had jurisdiction over Specification 3 of Additional Charge II, I conclude that the military judge plainly erred in providing an "on or about" instruction for this specification and therefore dissent from the majority's resolution of Issue II insofar as it concerns Specification 3 of Additional Charge II. On these grounds I would set aside Appellant's conviction for that offense and authorize a rehearing.

---

has failed to establish that the "on or about" instruction led to convictions for conduct that occurred when he was not in a military status. *Cf. United States v. Royal*, 972 F.2d 643, 649 (5th Cir. 1992) (concluding that "on or about" instruction did not constitute plain error because "the facts of the case eliminate the possibility that the jury could have convicted the Defendant for acts barred by the statute of limitations").

[6] I concur with the result reached by the majority for Issue III.